## The State of Kansas v. The Board of County Commissioners of Wichita County.
### No. 11093.

1: Refunding Bonds—*in action on, by bona fide holder, where county claims no bonds existed to be refunded, certificate of county clerk to secure registration by state auditor admissible for plaintiff.*    In an action to collect interest coupons on negotiable refunding bonds of a county, brought by a party claiming to be an innocent purchaser for value before maturity, in which the right of the county officers to issue the bonds is denied on the ground, among others, that at the time they were issued there were no outstanding county bonds to be refunded, a certificate signed by the county clerk of the county filed with the Auditor of State showing the facts required by section 13, chapter 46, of the General Statutes of 1897 is admissible in evidence.

2. —— *injunction obtained by tax payers against county officers forbidding issue of bonds purporting to have been refunded, inadmissible as evidence against bona fide holder.*    As against a *bona fide* holder, for value before maturity, of negotiable refunding bonds regular in form, the record of a judgment,

in a suit brought by tax payers against the officers who issued the bonds, enjoining them from issuing railroad bonds in exchange for which the refunding bonds purport to have been issued, is inadmissible either to prove the illegality of such railroad bonds, the fact that no such railroad bonds were outstanding, or a want of power in the county officers to issue the refunding bonds, where the holder is not chargeable with notice of such judgment.

3. LIS PENDENS—*bona fide purchaser of commercial paper, not affected by doctrine of.* The doctrine of *lis pendens* does not apply to commercial paper so as to charge *bona fide* holders of it with notice of suits between third parties by which its execution or transfer is sought to be restrained.

Error from Wichita District Court. J. E. Andrews, Judge. Opinion filed June 11, 1898. *Reversed.*

*L. C. Boyle*, Attorney General, for the State.

*John Burns*, County Attorney, and *J. S.* and *J. W. Caldwell*, for defendant in error.

ALLEN, J. The Attorney General, on behalf of the State, instituted this action in the District Court of Wichita County to recover the amount of three interest payments, claimed to be due on each of thirty-five bonds of Wichita County for a thousand dollars each. Only the amount of the interest coupons sued on is directly involved in the case, but, as the right of the plaintiff to recover depends on the validity of the bonds, the indirect effect of the decision materially affects the permanent school fund in which the bonds are held.

The bonds were issued on the first of January, 1892. The recitals in them show that they were issued for the purpose of refunding the bonded indebtedness of the County, under chapter 163 of the Laws of 1891, which was an act amendatory of chapter 50 of the Laws of 1879 ; that the indebtedness refunded existed at the time of the passage of the act of 1891 ; that the proper evidence of such indebtedness had been de-

livered up for cancellation; that the bonds so delivered up had been outstanding for more than two years prior to making the order for refunding them, and that all acts, conditions and things required by said act of the Legislature to be done precedent to the issuing of the bonds had been properly done and performed. The bonds were registered by the Auditor of State on the day following their date, and he indorsed on the back of each of them, a certificate that it had been regularly and legally issued. The first seven interest coupons were paid by the county. The bonds were bought for the school fund by the state school fund commissioners on November 9, 1894. Default was made in the payment of the interest evidenced by coupons numbers 8, 9 and 10, which are the ones now in suit.

The defendant filed a long answer, verified on belief by the county attorney, denying generally the allegations of the petition, except as expressly admitted, and alleging that it became one of the organized counties of the State on the twenty-fourth of December, 1886; that on May 26, 1887, the Chicago, Kansas, & Western Railroad Company presented a petition to the Board of County Commissioners to submit to the voters of the county a proposition to aid in the construction of its railway through the county; that the Board, on the first of July, 1887, illegally declared the proposition carried, by throwing out the vote of two townships, and illegally ordered the clerk of the county to make a subscription for $80,000 of the capital stock of the company in exchange for $80,000 of county bonds; that the clerk illegally made such subscription; that the only consideration for certain of the bonds described in the petition was such pretended subscription; that the sole consideration for certain other bonds, also described by number, was,

like proceedings with reference to a subscription to the capital stock of the Denver, Memphis & Atlantic Railroad Company, under which a subscription of $55,000 to the stock of the last named company was made in exchange for $55,000 of the bonds of the county; that the refunding bonds were issued directly in settlement of the subscription, and not for the purpose of taking up prior bonds; that, on the sixth of December, 1887, Gallagher and Cowgill brought two suits in the District Court of Wichita County against the county commissioners, clerk, and the respective railroad companies, to enjoin the issuance of county bonds under such subscriptions, and that, on the ―― day of June, 1889, final judgment was rendered in said action granting perpetual injunctions as prayed for. Other matters are set up in the answer, which it is not necessary to state here.

To this answer the plaintiff filed a reply containing, *first*, a general denial; *second*, a statement that the defendant had ratified the bonds and coupons in controversy, by the voluntary payment of interest; and alleging that the plaintiff was a *bona fide* purchaser of the bonds before maturity, without notice of the injunction proceedings mentioned in the answer.

On these pleadings the case was tried to the court without a jury. Judgment was rendered for the defendant. The plaintiff brings the case here for review.

The questions involved are discussed, by both parties, much as if the case were on trial here both as to the law and the facts. Of course this court is concluded on all controverted questions of fact by the findings of the trial court, and can only review the questions of law properly raised there and regularly presented here. Doubtless this course was adopted because of a desire to have the merits of the contro-

versy passed on by this court, but it results in difficulty and embarrassment rather than a more full and satisfactory disposition of the questions of law involved. It is always best to follow the rules, and present clearly and pointedly the questions of error in the proceedings of the lower court relied on for a reversal of its judgment.

The most important question of fact at issue was whether the bonds now held in the State school fund were issued in exchange for railroad bonds, actually outstanding at the time they were issued, or were issued in compromise of the claims of the railroad companies for such bonds under subscriptions to the capital stock of the companies. On this most important question the evidence is unsatisfactory. On the side of the plaintiff are the recitals of the bonds, and a journal entry of the proceedings of the Board of County Commissioners showing their doings at the time the refunding bonds were issued, wherein it is recited that these bonds were issued in exchange for railroad bonds, surrendered by the railroad companies, which were destroyed in the presence of the Board by the clerk. The entries in the journal of the Commissioners were admitted in evidence, but proof was allowed to be introduced with reference to the handwriting in which the entries were made, and tending to show that they were not in the handwriting of the county clerk. Counsel, in the briefs, speak of these entries as copies, not as originals. Documents from the office of the Auditor of State, purporting to be signed by the members of the Board of County Commissioners, and also by the county clerk, identical in language with the entries on the journals of the county commissioners, which counsel for the State argue were the original orders, were offered in evidence, but

excluded by the trial court.  This ruling is pointed
out as erroneous.

It is not apparent that these documents would have
added anything to the plaintiff's case.  The entry on
the journal of the board of county commissioners is
the original of every order made by them.  It matters
not whether it is entered up by the clerk himself from
oral directions given by the board, or whether it is
copied from a draft of an entry approved by the board.
The record in their journal of the proceedings of a
board of commissioners, like the journal entries of the
proceedings of a court, are the originals and the high-
est and best evidence of their acts.  The original
drafts, no matter how formally approved or signed up,

1. Certificate of
County Clerk
admissible,
when.

are merely directions to the clerk for his
guidance in making up the permanent
record.  In connection with these docu-
ments there was also offered in evidence two certificates
of the chairman of the board of county commissioners
and county clerk, which appear to have been made for
the purpose of authorizing the registration of the bonds
by the Auditor of State, in compliance with the pro-
visions of § 13 of ch. 46 of the General Statutes of 1897.
These were offered together with the other documents
to which they appear to have been attached.  They
were also excluded.  In rejecting these certificates the
court erred.  They were statutory certificates required
as a basis for the action of the Auditor.

On behalf of the defendant, the records of the
county clerk's office of Wichita County, showing the
bonds issued by the County, were introduced in evi-
dence.  It appeared that entries of certain bonds
issued to refund county warrants had been duly made,
as also of the refunding bonds now in controversy;
but there were no entries of railroad bonds issued in
payment of subscriptions to the capital stock of the

railroad companies before mentioned. The defendant also introduced, over the objection and exception of the plaintiff, the record of the proceedings in the case of Gallagher and Cowgill v. Johnson and others, being the action to enjoin the commissioners and county clerk from issuing bonds to the Denver, Memphis and Atlantic Railway Company in payment of the subscription to the capital stock of that company, from which it appears that, on the twenty-sixth day of June, 1889, the action was dismissed by the plaintiff as to the railway company, and judgment entered, on overruling the demurrer of the defendants to the plaintiff's petition, granting a perpetual injunction against issuing the bonds. A like judgment was also shown in another action, enjoining the issuance of bonds to the Chicago, Kansas & Western Railroad Company. Error is alleged in the admission of these judgments. It appears from the recitals in the entry of judgment in this case, that the court gave much weight to these judgments ; the court finding :

2. Injunction inadmissible against bona fide holder.

"The court finds from the evidence that the bonds described in plaintiff's amended petition and the coupons cut therefrom and that constitute the various causes of action in said petition were issued in violation of the order and decree of this court in the cases of *Thomas Gallagher and Perry J. Cowgill v. The Board of County Commissioners of Wichita County, Kansas, et al.*, and the court finds that the orders of injunction issued by this court in those cases have never been vacated, but are and have been since the —— day of June, A. D. 1889, in full force, and that the public records in Wichita County, Kansas, was notice to the world that the clerk and chairman of the board of county commissioners of Wichita County, Kansas, or the commissioners of said County and State have not power to issue those bonds and coupons sued upon."

This action was brought by the State, which was a

stranger to the judgments admitted in evidence and which the court appears to have given controlling effect in the decision of this case. The injunction was not against the issuance of these bonds, but the original railroad bonds. The bonds from which the coupons sued on were clipped are negotiable in form, payable to bearer. It is not controverted that the School Fund Commissioners bought them before due, for value, and without actual notice of the injunction proceedings. The judgments in those cases constitute no bar to the plaintiff's recovery, nor is it apparent that they were admissible for any purpose. In *Carroll County v. Smith*, 111 U. S. 556, it was held: "The issuing of a temporary injunction, which was afterward made permanent, by a state court, restraining municipal officers from issuing municipal bonds, does not estop a *bona fide* holder for value, who was not a party to the suit, from maintaining title to such bonds issued after the temporary injunction." A judgment is admissible against strangers to it wherever it is material to show the fact that the judgment was rendered, and its effect on the rights of the parties to it, but not for the purpose of showing the existence of the state of facts on which it was based, or the legal consequences resulting from such facts. As to these, it is *res inter alios acta* and without force. 1 Wharton on Evidence, § 823 ; Freeman on Judgments (4th ed.), § 416.

The doctrine of *lis pendens*, under which all the world is required to take notice of certain classes of **3. Bona fide purchaser not affected by lis pendens.** proceedings in courts of record affecting the title to property which is the subject of litigation, has no application to suits relating to negotiable instruments before maturity. *Winston v. Westfeldt*, 22 Ala. 760, 58 Am. Dec. 278 ; Freeman on Judgments (4th ed.), § 194; *County of Warren v. Marcy*, 97 U. S. 96. Under these authorities,

even if the injunction had been against issuing the very bonds in suit, it would have had no effect on the rights of the plaintiff. Much less can an injunction against the prior bonds be controlling in the decision of this case. It is not apparent that the fact that the injunctions were granted is material in this case. It does not prove, either that the bonds were not outstanding at the time the injunction was granted, or that the defendants did not violate it. Proof of the rendition of a judgment is not equivalent to proof of its execution. It may or may not be carried into effect. The error in the admission of these judgments is of prime importance because the court appears to have given them controlling weight in the determination of the case.

Various other considerations are urged by each party as of controlling force in its favor in this controversy, but the state of the record gives us no basis for directing a judgment in the case. It would seem to be an easy matter to show, by clear and satisfactory proof, the very important fact whether or not there were railroad bonds actually outstanding for which the refunding bonds were exchanged, without leaving the matter to be determined from the recitals in the bonds and inferences to be drawn from the public record.

While not presented as a ground of error, inasmuch as the case is to be sent back for a new trial, we remark that the court was in error in holding that the burden of proof rested on the plaintiff. There was no denial under oath of the execution of the bonds and coupons in suit. There is nothing on the face of them to impeach their validity. The burden was on the defendant to show it.

For error in the admission and rejection of evidence, as above pointed out, the judgment must be reversed and the case remanded for a new trial.