THE STATE OF KANSAS v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WICHITA.

**No. 11,496.** (64 Pac. 45.)

REFUNDING BONDS—*Power of County Commissioners—Estoppel by Recital in Bonds.* Boards of county commissioners are authorized to refund bonded indebtedness which has been outstanding for more than two years; and where a board issues refunding bonds under the refunding act (Laws of 1891, ch. 163; Gen. Stat. 1897, ch. 48, §§ 1, 3, 4; Gen. Stat. 1899, §§ 517, 519, 520), and recites on the face of the refunding bonds that the debt refunded is county bonds which actually existed when the act was passed, and which had been outstanding for more than two years, and that all prerequisite facts existed, and all conditions precedent to the issue of refunding bonds had been complied with, and at the same time makes a full report to the auditor of state of the steps taken and the proceedings had in the matter of refunding, as the refunding act requires, certifying that all acts, conditions and things required to be done precedent to the issue of the bonds had been properly done and performed, the defense that the debt refunded was not bonded indebtedness, nor bonds which had been outstanding for more than two years, is not available as against a *bona fide* holder; nor can the county, under the facts of this case, escape liability on the ground that the bonds issued exceeded in amount the limit prescribed by the refunding act.

Error from Wichita district court; J. E. ANDREWS, judge. Opinion filed March 9, 1901. *In banc.* Reversed.

*A. A. Godard*, attorney-general, and *J. S. West*, for plaintiff in error.

*John Burns*, county attorney, *J. S. & J. W. Caldwell*, and *Waggener, Horton & Orr*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is an action brought on behalf of the state to recover on the interest coupons of municipal bonds issued by the county of Wichita, and it

is the second time that the controversy has been before us for consideration. (*The State v. Wichita County*, 59 Kan. 512, 53 Pac. 478.) The bonds in issue are known as refunding bonds, authorized by chapter 163 of the Laws of 1891 (Gen. Stat. 1897, ch. 48, §§ 1, 3, 4; Gen. Stat. 1899, §§ 517, 519, 520), and purport to have been issued to refund bonds previously issued by the county in aid of the construction of two railroads. In 1887 the electors of the county voted bonds to aid in the construction of a railway of the Chicago, Kansas & Western Railroad Company, to the amount of $80,-000, and also of the railway of the Denver, Memphis & Atlantic Railroad Company, to the amount of $55,-000; and the county was to receive an equal amount of the capital stock of each company in exchange for the county bonds that were to be issued.

It was alleged, and testimony was offered to show, that the original bonds were not in fact issued to the railroad companies, but that, after the vote was taken and the railroads built, a dispute between the county and the railroad companies arose as to the issuance of the bonds. Finally a compromise was effected, in which the Chicago, Kansas & Western Railroad Company agreed to accept refunding bonds in the amount of $55,000, and the Denver, Memphis & Atlantic Railroad Company agreed to accept refunding bonds in the sum of $30,000. Instead of issuing the original bonds and then refunding them, the commissioners made a record reciting that the original bonds were issued and were in existence, and that upon a compromise being made the refunding bonds were issued to take them up.

The refunding bonds that were issued, and which are now in dispute, contained recitals that they were issued for the purpose of refunding the bonded in-

debtedness of the county, in conformity to and in compliance with chapter 163 of the Laws of 1891 (Gen. Stat. 1897, ch. 48, §§ 1, 3, 4; Gen. Stat. 1899, §§ 517, 519, 520) ; that the bonded indebtedness refunded actually existed at the time of the passage of the said act of 1891 ; that proper evidence of such indebtedness for which the bonds were issued had been delivered up for cancelation; that the bonds so delivered up for cancelation had been issued and outstanding for more than two years before the order for refunding the same, and that all acts, conditions and things required by the said act of the legislature to be done precedent to the issuance of the bonds had been properly done and performed. In addition to this recital, a report was made by the board to the auditor of state showing that the refunding bonds had been issued in lieu of other existing bonds, and that the bonds for which the refunding bonds had been issued had been delivered up for cancelation and had been duly canceled, and had marked across the faces thereof, in plain manner, the words "Paid in full," and also that an order had been made for the destruction of the surrendered bonds, describing them, and, in pursuance of the order, and in the open session of the board and in the presence thereof, the bonds funded were burned and destroyed. The auditor of state thereupon registered the refunding bonds in question, and indorsed on the back of them a certificate that they had been regularly and legally issued, according to the provisions of the Laws of 1891, and that the signatures attached thereto were genuine.

More than two years afterward the refunding bonds so issued and registered were purchased by the school-fund commissioners for the benefit of the permanent school fund, and for about four years thereafter the

county regularly paid the interest, but afterward default was made and the attorney-general brought this action.   It was developed on the trial and found by the court that the railroad bonds voted by the people of the county were not actually issued, and that the refunding bonds in question were not issued in lieu of other bonds; that no evidence of indebtedness of any character was surrendered for cancelation, and that no bonds or coupons were destroyed by the county commissioners at the time the refunding bonds were issued.   It was also found that the refunding bonds issued were in excess of five per cent. of the total valuation of the taxable property of Wichita county. As will be observed, the recitals in the bonds are full and complete, and show that all of the conditions prerequisite to an issuance of the bonds had been complied with, and that they were regularly and honestly issued by the proper officers of the county.   Do these recitals, and the certificate of the officers that all of the facts necessary to the issue of the bonds existed and that all the requirements of the law had been complied with, estop the county from denying the existence of the facts of the non-compliance with the requirements in an action upon them by a *bona fide* holder?

The general rule is that individuals cannot by their representations induce others to purchase property or part with money and afterward deny the representations or repudiate the obligations assumed on the faith of their representations.   In their dealings municipal and other corporations are held to the same rule of truth and honesty as individuals, and the innocent purchaser of municipal bonds has a right to assume that the officers representing the municipality are honest and that the statements made in the exercise of

their authority are true.    Business is transacted and
justice administered upon the presumption that pri-
vate citizens and public officials are honest and faith-
ful, and the presumption continues until the contrary
is shown.    This presumption, together with the nego-
tiable quality of municipal bonds and the conclusive-
ness of recitals in them, greatly facilitates their sale
and exchange and largely increases their value.    Of
course, officers cannot issue municipal bonds unless the
law vests them with power to issue such bonds, and
where there is no power officers cannot by recitals
merely bind the municipality or estop it to deny the
truth of the recitals.    The general rule is, however,
that if under any state of facts and circumstances there
is lawful power in the municipality and its officers to
issue bonds, they may, by recitals in the bonds, estop
the municipality to deny the existence of the pre-
requisite facts and circumstances recited, unless the
law prescribes a particular test, such as a public rec-
ord, for the determination of the existence of such facts
and circumstances.

In behalf of the county, it is contended that whether
bonds had been issued and outstanding for two years
prior to the issuance of the funding bonds in contro-
versy might have been ascertained from the records
of the county clerk and auditor of state under certain
general provisions of the statute. (Gen. Stat. 1897,
ch. 46, §§ 13, 14; Gen. Stat. 1899, §§ 488, 489.)    The
act under which the refunding bonds were issued
(Laws 1891, ch. 163; Gen. Stat. 1897, ch. 48, §§ 1, 3,
4; Gen. Stat. 1899, §§ 517, 519, 520) does not limit
the bonds to be refunded to those which may have
been entered or registered by the county clerk or other
officer.    On the other hand, it expressly authorizes
the funding of bonds which have been issued and out-

standing for more than two years, without reference to the registration. A bond is not invalid because it has not been registered, and there is no reason why unregistered bonds legally issued and which have been outstanding a sufficient length of time should not be refunded. Then, again, the refunding act itself under which the bonds in question were issued requires the county commissioners to ascertain and certify on the face of the bonds that they were issued under that act. (Gen. Stat. 1897, ch. 48, § 2; Gen. Stat. 1899, § 518.) It thus appears that the act expressly authorizes recitals; and it goes still further, and provides that a public record shall be made of all bonds issued in pursuance of the act, not only with the county clerk but also with the auditor of state. The commissioners are required to make and forward to the auditor of state a certified statement of all the proceedings had by them in issuing the bonds, and that the bonds had been issued in all respects in conformity with the act, for certain indebtedness surrendered, distinctly describing the indebtedness surrendered and the bonds issued, and also that they had been duly registered, which statement is required to be signed by the officers signing the bonds and attested by the clerk. Thus we see that the act itself not only provided for recitals, but also for a record in the auditor's office containing a detailed statement showing all important facts as to the debt refunded and the right and authority to refund, and all the steps taken in the matter of refunding. In this instance the statement was made and filed by the county commissioners, and the public record so made corresponded with and sustained the recitals in the bonds in every particular and showed that they were regularly and legally issued.

The county commissioners are the authorized agents of the county to control its business and financial concerns, and their statement made in pursuance of the *statute* was an assurance to the school-fund commissioners that the debt funded was a valid one, and that it was in the form of bonds which had been outstanding for more than two years before the time of refunding. In addition to their general authority the commissioners had specific power to refund *bonded* indebtedness. In the exercise of that power it devolved upon them to ascertain and determine that the debt offered to be refunded was bonded indebtedness, and, further, that such indebtedness had been outstanding for more than two years. It being incumbent on them to ascertain and determine these prerequisite facts, their decision, and the recitals by them as to the existence of such facts, and also that all conditions precedent had been complied with, are conclusive in favor of the *bona fide* holder.

These conclusions follow from a long line of decisions of the federal courts, including the United States supreme court, as to the conclusive effect of recitals in municipal bonds. Most of the cases involving this question are triable, and are in fact tried, in the federal courts, and, it being a subject of general jurisprudence which these courts determine for themselves independently of the rulings of the state courts, and which has been so frequently and fully considered, we are constrained to follow the rules established by the supreme court of the United States, whatever might have been our own views of some phases of the question if we had first been called upon to decide them. It is contended that there has been a departure from the rule in *Sutliff v. Lake County Commissioners*, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145,

and some of the language used in the opinion gives
cause for the contention ; but the later cases, and espe-
cially *Gunnison County Commissioners v. E. H. Rollins
et al.*, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689,
in which the preceding cases are fully reviewed, leave
no doubt of a purpose to adhere to the doctrine of the
conclusiveness of recitals.　The circuit court of the
United States recently passed on the validity of re-
funding bonds of Wichita county which were issued
under exactly similar circumstances as those in contro-
versy here, and were in fact a part of the same series.
The validity of the bonds, and the right of a *bona fide*
holder to recover on them, was decided upon the
grounds asserted here, and we delayed the determina-
tion of this case a considerable time awaiting a deci-
sion by that court.　A few weeks ago the case was
decided from the bench by a unanimous court, and it
was ruled that recitals were conclusive, and that the
county was estopped to deny the facts recited.

Our conclusion from all the authorities is that, as
against the state, the recitals on the face of the bonds
estop the county from denying the truth of the same,
and it is no defense that the debt refunded was not in
fact bonded indebtedness, nor that the bonds certified
to have been refunded were not outstanding more
than two years before the time of the refunding.
Among the authorities supporting our conclusion,
we cite the following : *Commissioners of Knox County,
Indiana, v. Aspinwall et al.*, 21 How. (U. S.) 539, 16
L. Ed. 208 ; *Town of Coloma v. Eaves*, 92 U. S. 490,
23 L. Ed. 579 ; *Orleans v. Platt*, 99 U. S. 676, 25 L.
Ed. 404 ; *Hackett v. Ottawa*, 99 id. 86, 25 L. Ed. 363 ;
*City of Cadillac v. Woonsocket Inst. for Savings*, 58 Fed.
935, 7 C. C. A. 574, 16 U. S. App. 544 ; *City of Huron
v. Second Ward Sav. Bank*, 86 Fed. 272, 30 C. C. A. 38,

49 L. R. A. 539; *Board of Com'rs v. Ætna Ins. Co.*, 90 Fed. 222, 32 C. C. A. 535, 61 U. S. App. 41; *National Life Ins. Co. v. Board of Education*, 62 Fed. 778, 10 C. C. A. 637, 27 U. S. App. 244; *Board of Com'rs v. Society for Savings*, 101 Fed. 767, 41 C. C. A. 667; *Hughes County v. Livingston*, 104 Fed. 306, 43 C. C. A. 541; *Clapp v. Otoe County*, 104 Fed. 473; *Chaffee County v. Potter*, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040; *Evansville v. Dennett*, 161 id. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; *Provident Trust Co. v. Mercer County*, 170 id. 593, 18 Sup. Ct. 788, 42 L. Ed. 1156; *Gunnison County v. Rollins*, 173 id. 255, 19 Sup. Ct. 390, 43 L. Ed. 689.

There is a further contention that the refunding bonds issued were in excess of the amount which the county was authorized to issue; but this question, like those that have been considered, was for the determination of the board, and, under the rule of the authorities, its certificate and recitals preclude an inquiry into those matters, as against a *bona fide* holder. Aside from that consideration, it would appear that the indebtedness of the county was not increased by the act of refunding. For the purposes of this case it must be assumed that the debt refunded was a valid bonded indebtedness, and the refunding bonds issued, instead of increasing the debt of the county, actually compromised and diminished it. Besides, the provision of the statute under which the bonds were issued fixes the limitation, and manifestly it has no application to the bonds in controversy here. The limitation is found in section 2 of the act, and is as follows:

"That except for the refunding of outstanding bonds or matured coupons thereof or judgments thereon, no bonds of any class or description shall hereafter be issued where the total bonded indebtedness

of such county or township would thereby exceed five per cent. of the assessment for taxation as shown by the last finding and determination of the proper board of equalization," etc.

As will be observed, funding bonds and the coupons thereof, as well as judgments thereon, are excepted from the limitation, and, obviously, it was not the legislative purpose to prohibit the refunding of outstanding bonds, whether over or under the limitation. In effect, the legislature has declared that no bonds of any class or description other than outstanding bonds shall be issued where the total debt would exceed the limit fixed.

It follows that the judgment of the district court must be reversed and the cause remanded for further proceedings in accordance with the views expressed herein.