C. G. ANDERSON, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD *et al*, *Appellees*.

No. 17,211.

SYLLABUS BY THE COURT.

1. COUNTY BRIDGES—*Erection and Repair—Authority—Amount Expended—Consent of Electors.* Section 655 of the General Statutes of 1909, authorizing county commissioners to make an appropriation of $4000 to build or repair a bridge and requiring an affirmative vote of the electors before a greater sum may be appropriated, does not preclude the building of a bridge which costs more than $4000, without a vote of the electors, where another municipality and other interested parties contribute so much of the cost of the bridge as ex-

ceeds $4000, and where no more than $4000 of the funds of the county is appropriated for that purpose.

2. ——— *Removal from Old to New Channel of Stream—Obstruction of Highway—Injunction.* Where a river spanned by an expensive bridge cuts a new channel, through which thereafter most of the water of the stream flows, it is competent for the county commissioners to remove the bridge from its position over the old channel and to rebuild it over the new one, and an owner of land some distance from the bridge but through whose land the highway connecting with the bridge passes, and who has full and free access to and from the land by other highways, is not entitled to an order enjoining the commissioners from removing the bridge.

3. HIGHWAYS—*Removal of Bridge—Restoration of Highway to Suitable Condition for Travel.* Since the commissioners have not vacated the highway of which the bridge in its old position formed a part, and apparently do not intend to vacate it, it may be assumed that if there is a necessity for the existence of the highway the commissioners, after the removal of the bridge, will restore the highway and put it in a reasonable and suitable condition for travel.

Appeal from Cloud district court. Opinion filed November 5, 1910. Affirmed.

### STATEMENT.

THIS suit was brought to enjoin the commissioners of Cloud county from removing a county bridge which cost more than $8000, and from rebuilding it in another place, without an affirmative vote of the electors authorizing it and without the notice and the plans and specifications required by law. On the application of C. G. Anderson for the injunction testimony was heard, and on this the court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT.

"(1) The plaintiff is a citizen of this state, a taxpayer of Cloud county, and since about the year 1900 has been the owner and in possession of the premises described in the petition of plaintiff, to wit, lots 7, 8 and 11, section 22, lot 3, section 23, lots 3 and 4, section 26, lots 1 and 3, and N. E. $\frac{1}{4}$ and S. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$,

Anderson v. Cloud County.

section 27, and lots 2 and 6, section 28, all in township 5 south, range 3 west, in Cloud county, Kansas, said farm containing 640 acres, more or less.

"(2) That the Republican river, a meandered stream, adjoins and bounds said farm on the north, except that a small portion of the S. E. $\frac{1}{4}$ of section 21 in said township and range, same being about three and one-half acres of low, sandy land, lies between a portion of plaintiff's north line and the said river.

"(3) That there is now and has been since 1903 a regularly laid out and traveled public highway, running in a northerly and southerly direction through the premises of plaintiff, said highway being known as the 'McCrary road.'

"(4) That there is and has been since the laying out and opening of said highway, and as a part thereof, where the same crosses said Republican river, a large and substantial iron bridge, erected by Cloud county at an expense of $10,457, and being the bridge sought to be removed by the defendants in this case.

"(5) That the McCrary road was established and laid out across a part of the plaintiff's farm, and across the land lying north of plaintiff's farm, on which rests the south end of the bridge, some time before the bridge was built over and across the Republican river at the point where said highway crosses said river; that said bridge was wholly built by Cloud county, and is a county bridge kept and maintained by said county.

"(6) That said bridge is located on the said McCrary road, about seventy-one yards north of the north line of plaintiff's farm, and on the farm of Charles Huscher—that is, the south end of said bridge is about seventy-one yards north of the north line of plaintiff's land, and there is a small tract of land of about three or three and one-half acres, belonging to said Huscher, that is south of said bridge; that the land of the plaintiff does not abut or adjoin upon said highway at the place where said bridge is located, and that no part of the said farm of plaintiff lies north of the said bridge.

"(7) That the highway and approach to said bridge on the south, running toward the city of Concordia, was repaired and put into good condition for public travel at the time said bridge was erected, the city of Concordia contributing thereto the sum of $5000, and said bridge and highway have been continuously used and are now used for public travel, said highway being

one of the main travelled roads into the city of Concordia.

"(8) That after the said bridge was erected the river branched on the west part of plaintiff's farm, a portion cutting a new channel around to the south and east and uniting with the old channel on the east part of plaintiff's farm, thereby forming an island of about 50 acres in extent.

"(9) That plaintiff's principal improvements, consisting of dwelling houses, barns and out buildings of a substantial nature, and of the value of several thousand dollars, are situate on the said island and front upon said highway.

"(10) That the defendant, the board of county commissioners, has maintained a temporary pile bridge across the south, or new, channel of the Republican river, said south channel being the one forming the island heretofore spoken of, and such bridge has been so maintained by the county of Cloud since or shortly after said McCrary road was established.

"(11) That, in addition to the McCrary road mentioned in former findings, the plaintiff has ingress and egress to his premises by other public roads touching his premises on the south and east for a distance of about one-half mile on the south line of lot 3, and west line of lot 4 of said section 26, which furnish full and free access to and from his farm and premises.

"(12) That no proceedings have ever been taken by the defendant board to vacate said highway known as the McCrary road or any portion thereof, and said board is attempting to remove said bridge without vacating said road or compensating the plaintiff.

"(13) The defendant board entered into a written contract on September 20, 1909, with the Western Bridge and Construction Company, for the building of a steel bridge over the Republican river on a public highway between sections 28 and 29, in township 5, range 3, in Cloud county, Kansas, for the sum of $3326. Said contract provided among other things for the removal of a certain bridge across the same river, about a mile down the stream, and being the bridge on the McCrary road, heretofore spoken of, to the new location between sections 28 and 29, the building of additional spans and approaches thereto, and the making of a complete bridge across said river at its new location.

"(14) The said contract was let to the lowest responsible bidder, upon sealed proposals, based upon written plans and specifications therefor, with an estimate of the cost thereof, and said plans and specifications and estimate of cost were on file. in the office of the county clerk of said county for more than thirty days next preceding the awarding of said contract; that, after said plans and specifications and estimates had been prepared and filed in the office of the county clerk, notice to bidders and notice of the intention of the board of county commissioners to appropriate $4000 of the county funds upon said structure were published, and said notices were posted in the county clerk's office from and including the 19th day of August, 1909, to the 20th day of September, 1909; that said contract was awarded at a regularly adjourned day of the September, 1909, session of said board of county commissioners of Cloud county, Kansas; that there are no irregularities in the awarding of said contract on the part of said board or anyone; and that the newspaper in which said notices were run was the official county paper of Cloud county, Kansas.

"(15) That the board of county commissioners orally and at the same.time agreed with the said Western Bridge and Construction Company that the only sum that would be paid for the removal, rebuilding and building of said new bridge from the funds of Cloud county would be $4000, and no more, that the balance of the consideration or pay for said work and material would be paid by the township of Sibley of said county and the commercial club of the city of Concordia, Kan., that the amount to be paid by said parties last named was $4326, and that this sum was to be paid over by said parties to the said board of county commissioners and by the said board to be paid to said bridge company; that all of said conditions were agreed to and accepted by the said Western Bridge and Construction Company, and that the said board of county commissioners will not expend on said removal and rebuilding of said new completed bridge any. sum in excess of $4000."

"CONCLUSIONS OF LAW.

"(1) That the plaintiff has the right to bring and maintain this action.

"(2) That the defendant, the board of county com-

missioners of Cloud county, Kansas, has full control of
the bridge in question and the right to move the same
pursuant to the contract entered into, and to have the
same rebuilt at the proposed new location.

"(3) That plaintiff is not entitled to the injunction
prayed for."

From this decision Anderson appeals.

*Sturges & Sturges, T. F. Garver*, and *R. D. Garver*,
for the appellant.

*A. L. Wilmoth,* for the Board of County Commis-
sioners.

The opinion of the court was delivered by

JOHNSTON, C. J.: The testimony and findings dis-
close that since the bridge in question was built the
river has changed its course, and that it is the declared
purpose of the commissioners to remove and rebuild the
bridge over the river in its new channel, instead of
leaving it over the channel through which the stream
formerly flowed. Appellant contends that there is a
lack of power in the commissioners to effect their pur-
pose. It is first contended that the bridge was located
and built under the authority of a special statute, and
that therefore special legislative authority is a pre-
requisite to the rights of removal. Nothing in the ab-
stract shows that the bridge was built under the au-
thority of a special statute, but even if it was con-
structed under chapter 102 of the Laws of 1903, as
appellant contends, it would not follow that special
authority was essential to the removal of the bridge.
That act did not purport to fix the location of the
bridge proposed to be built, but left the question of the
building of the bridge as well as the selection of the
location to the discretion of the commissioners. To
meet an emergency the commissioners were authorized
to provide means at once for building a bridge, but
nothing in the statute indicated that the bridge when

built should not be controlled and maintained the same as other county bridges which had been constructed under general authority. There is nothing in it suggesting that this particular bridge was to be excepted from the operation of the general laws or that it should be in a class by itself, subject to no control except that exercised directly by the legislature.

The next contention is that the city of Concordia contributed money to complete the building of the bridge and that it can not be removed without the consent of that municipality. In the first place the finding of the court was that the bridge "was wholly built by Cloud county." Instead of there being a joint interest or ownership by two municipalities, as in the cited case of *Greeley Township v. Comm'rs of Saline Co.*, 26 Kan. 510, this bridge was recognized by all as a county bridge, and the court found that it was not only built but that it was kept and maintained by the county. There is a finding that the city contributed money toward the repair of the highway and approach running from the bridge toward the city of Concordia, but it is expressly found that the county alone constructed the bridge. Even if the city had some interest in the bridge, it is not here complaining. Nothing in the record indicates that appellant is authorized to complain for the city nor that he has been constituted as a guardian of its rights. An infringement of the rights of the city even, if it had occurred, would afford appellant no right to an injunction.

Another ground of injunction urged is that the contract for the construction of the bridge involves a greater sum than $4000, and that the appropriation has not been sanctioned by a vote of the electors. A statutory limitation which applies to Cloud county provides that the commissioners may make an appropriation for the rebuilding or repairing of a bridge to the extent of $4000, but where it is to cost a greater sum the commissioners can not make an appropriation

to exceed $4000 until the question has been submitted to the qualified voters of the county and a majority vote is given in favor of the appropriation. (Laws 1909, ch. 63, § 1, Gen. Stat. 1909, § 655.) It is true that the total cost of the bridge to be built exceeds the sum of $4000, but it is not to cost the county more than that sum. The limitation is on the appropriation to be made for the particular bridge, and not upon the contributions which others may make toward the construction of it or on the value of the property which the county may acquire for an expenditure of less than $4000. The purpose of the legislature manifestly was to prohibit the expenditure of more than $4000 of county money upon a single bridge without the authority of the electors. While the act speaks of the cost of the bridge, a reading of the entire provision indicates clearly enough that it refers to the cost to the county and only undertakes to limit the appropriation which the county may expend upon the bridge. In the agreement with the construction company which undertook to build the bridge it was expressly stipulated that no more than $4000 of county money should be paid for the removal and rebuilding of the bridge, and that the remainder should be contributed by the township of Sibley and the Concordia Commercial Club. The contracting company agreed to be bound by this condition. So far as the record shows, the commissioners were acting in good faith in the steps taken to restrict the expenditure by the county on the bridge to $4000, and the agreement which they made seems to be sufficient to effectuate their purpose. There was nothing improper in their accepting from interested parties contributions toward the rebuilding of the bridge. The policy by which municipalities coöperate in public enterprises and of private parties sharing in the expense of such enterprises has been approved. (*Plaster Co. v. Blue Rapids Township,* 77 Kan. 580.) The material question here is, Did the contract and proposed action

of the commissioners involve an appropriation of county money in excess of $4000? The findings of the trial court, which are not questioned, make it reasonably clear that it did not, and, that being so, an approving vote of the electors was not essential.

The objections to the notice and other steps preliminary to the awarding of the contract are without merit, as there is a finding by the court that all of these steps were regular and sufficient.

It is finally contended that the action of the commissioners renders the highway impassable and operates to vacate it, whereas the law makes it their duty to keep the highways in a safe and passable condition. The evidence and findings do not show a purpose to vacate the highway or to deprive appellant or others of its use. It is expressly found that the board did not undertake to vacate the highway and is proceeding to remove the bridge without attempting a vacation. It is to be noted that the bridge does not touch appellant's land but is a short distance north of it. The highway leading south from the bridge does pass through his land, but the court finds that ingress and egress to and from his premises are afforded by other public roads which touch his land and that they furnish free access to and from his premises. However, as we have seen, the commissioners do not propose to close the highway by the removal of the bridge. No reason is seen why they may not substitute an inexpensive one which will serve the purpose. They are not compelled to maintain a $10,000 bridge over the old bed of the river when perhaps a small bridge or culvert costing no more than $200 or $300 would complete the highway and make it passable. It is said that if the bridge had been washed out by a flood the commissioners could have been compelled to build another bridge and to make the highway passable, if sufficient funds were on hand for that purpose; but, granting the contention, it does not follow that the commissioners are required to

build the kind of a bridge that was washed out. It would not be their duty to provide an expensive bridge if an inexpensive culvert would equally well accommo- date the public. It may be assumed here that if a ne- cessity for the continuance of that part of the highway exists the commissioners will, upon a removal of this bridge, do their duty in the premises and put the high- way in a reasonable and suitable condition for travel. At any rate, appellant can not tie the hands of the com- missioners and prevent the placing of the bridge over the river in its new channel because of his fear that the commissioners will not properly restore the highway by substituting an adequate culvert or bridge for the one removed.

Appellant did not show a right to the injunction, and hence the judgment of the district court is affirmed.