No. 22,520.

J. M. WRIGHT et al., *Appellants*, v. THE BOARD OF EDUCATION OF THE CITY OF LEAVENWORTH et al., *Appellees.*

SYLLABUS BY THE COURT.

1. SCHOOL BUILDINGS—*Taxes for Erection and Maintenance of Industrial-training School Building.* The existence of the act specifically authorizing a tax for the equipment and maintenance of an industrial-training school does not prevent the erection under the provisions of the general school law of a building to be used for a school of that character.

2. SAME—*Limit of Costs of Erection and Repair of School Buildings.* In the statute authorizing the voting of bonds for the erection of a school-house, the provision that the board shall complete the building within the estimated cost thereof, and shall in no case create a deficiency in connection therewith, does not prevent the expenditure for that purpose of such sum in excess of the original estimate, and of the amount of bonds voted, as may be raised by the levy of a two-mill tax permitted by another statute for the construction and repair of school buildings.

3. SAME—*Voluntary Contributions Toward Erection of School Buildings.*
The statutory restrictions referred to in the foregoing paragraph do
not prevent the board from accepting and expending upon the erec-
tion of such schoolhouse, in addition to the proceeds of such bonds and
tax, money contributed for the purpose by a voluntary association.

4. SAME—*Inaccuracies in Stating Purpose of Tax Levy.* Possible in-
accuracies in expressing the purpose of a tax levy held not to be fatal
to its validity.

5. SAME—*Purposes for Which School Building May be Used.* The fact
that the proceedings preliminary to the decision of a school board to
erect a new building show that individuals who encouraged such action
expected it to be used in part for other than strictly school purposes
furnishes no ground for enjoining its construction.

6. SAME. The fact that a contribution to the building fund of a school
board is accompanied by expressions indicating that the donor ex-
pects the public to derive advantages from the building, in aid of the
construction of which it is given, otherwise than from its use for
strictly school purposes, is not sufficient to render the donation un-
available for that purpose.

Appeal from Leavenworth district court; JAMES H. WEN-
DORF, judge. Opinion filed March 6, 1920. Affirmed.

*A. E. Dempsey,* and *C. F. W. Dassler,* both of Leavenworth,
for the appellants.

*Lee Bond,* of Leavenworth, for the appellees.

The opinion of the court was delivered by

MASON, J.: The board of education of Leavenworth decided
to erect a building for an industrial-training school, and sub-
mitted to the voters a proposition to issue $50,000 in bonds for
that purpose. Finding that sum, together with $10,000 to be
contributed by a voluntary organization, to be insufficient, it
levied a two-mill tax in order to bring the available resources
up to the required amount. An action was brought by tax-
payers to enjoin its further proceedings in pursuance of its
plan. The injunction was denied, and the plaintiffs appeal.

1. The plaintiffs challenge the right of the board to issue
bonds for the construction of an industrial-training school.
They concede that bonds may be issued for necessary school
buildings, and that in the absence of any statute relating spe-
cifically to industrial-training schools the board, having the
power to determine what matters may be taught and to make

suitable provision therefor. (*Board of Education v. Welch,* 51 Kan. 792, 33 Pac. 654), might provide for the erection of a building for use in that branch of instruction; but they contend that inasmuch as in 1903 a statute was enacted making specific provision for the establishment of schools of that character, the method there laid down is exclusive, and none other can now be pursued. In the following copy of the first two sections of that act the phrases bearing particularly on this question are italicised:

"The board of education in each city of the first class and second class, and the annual school meeting of any school district, may, *in addition to the other levies,* levy a tax not to exceed one-half mill upon the dollar of assessed valuation in cities of the first and second class, and not to exceed one mill on the dollar of the assessed valuation in all other cities and school districts, *for the equipment and maintenance of industrial-training schools* or industrial-training departments of the public schools. The sum raised by such levies shall be expended for the purpose named in this act and no other." (Gen. Stat. 1915, § 9384.)

"Said board of education and district board, *upon such levy being made, may provide for a separate school or a separate department in some existing school,* and may employ such teachers as they think are competent to give instruction in industrial training, as required by their course of study; and it shall be the duty of such board to provide, from the funds received under the provisions of this act, the necessary books, appliances and room for such instruction, and it shall be the duty of such board to prescribe a course of study to meet the special needs of the district or city, which course of study must be approved by the state board of education." (Gen. Stat. 1915, § 9385.)

In behalf of the plaintiffs it is argued that the clause authorizing an industrial-training school or department to be provided by the board "upon such levy being made" implies that without such levy having been made no such authority exists, and except after such action, and from the funds so obtained, no building can be constructed for use in that connection. We do not regard this as a correct interpretation of the statute. Obviously, its purpose was not to grant the power to create a school of that character, for such power already existed. It can hardly have been meant to circumscribe the board's power in that respect, for its spirit is plainly to encourage the establishment of industrial-training schools, provision being made in another section for the grant of state aid thereto. (Gen. Stat. 1915, § 9388.) The new authority it gives the board is to levy

a tax for the object indicated, notwithstanding preëxisting limitations, this being fairly to be implied from the provision that it may be levied "in addition to the other levies." The tax, moreover, is not for the erection of a building, but for the equipment and maintenance of the schools. We find in this statute nothing to prevent the board of education from invoking the machinery of the general law for the erection of a building, even although it is to be used as an industrial-training school.

2. After the bonds had been voted, it was discovered that owing to the increased cost of labor and material the proceeds, supplemented by the $10,000 donation, would be inadequate to pay for the building called for by the plans, although the original estimate of its cost had been but $50,000. A subsequent estimate called for $92,500. To meet this situation the board at first adopted a resolution to submit to the voters a proposition to issue more bonds. Later this was rescinded and it was decided to raise the additional amount by taxation. In pursuance of this plan a two-mill tax was levied, this action being taken under color of the statute authorizing an annual levy of that amount "for the purchase of sites and for the construction and repairing of school buildings." (Gen. Stat. 1915, § 11378, as amended by Laws 1917, ch. 324, § 1, since amended by Laws 1919, ch. 308, § 1.) The plaintiffs contend that this levy is illegal and void, particularly because of the provisions of the statute italicised in the following quotations:

"Whenever it shall be necessary to raise funds to *purchase a school site* or sites, to furnish, to repair, to make additions, or to build a school building, it shall be the duty of the board to prepare an estimate of the costs of such site or sites, repairs, additions, or buildings, together with the cost of furnishing the same, with estimates, shall be spread upon the records of the board, when adopted by a recorded yea-and-nay vote of two-thirds of all the members of the board at a regular meeting; and in every case *the board shall complete* said repairs, additions, or *buildings, together with the furnishing of the same and the purchase of such site or sites, within the estimated costs thereof; and in no case shall any board create a deficiency or outstanding obligations in the purchase of such site or sites, the making of such repairs, or the erection of additions or buildings. And every member of a school board who shall be a party to creating a deficiency or outstanding obligations within the meaning of this section shall be deemed to be guilty of a misdemeanor. . . ."* (Gen. Stat. 1915, § 9080.)

*"That it shall be the duty of the mayor of such city of the first class within thirty days after receiving a certified copy of the action of the board of education, showing a necessity and giving a statement of the estimated cost of such school sites, repairs, additions, building or buildings, signed by the clerk and countersigned by the president of the board, to issue a proclamation for holding an election to vote bonds to the amount prayed for by the board; and no bonds shall be issued unless a majority of the qualified electors of the city school district voting at such election shall vote therefor;* nor shall the entire amount of such school bonds issued exceed in the aggregate, including existing indebtedness, two and one-half per cent of the valuation of taxable property of such city as ascertained by the last assessment for state and county purposes previous to incurring the proposed indebtedness. Any member of a board of education, or officer thereof, who shall vote for, counsel, consent·to or in any wise assist in the issue of any bond or bonds in excess of the per centum herein authorized shall be liable jointly and severally to the holder of any such bonds for the amount due thereon, to be recovered in a civil action in any court of competent jurisdiction; and judgments thereon may be collected and enforced in the same manner as other judgments are collected and enforced. . . ." (Gen. Stat. 1915, § 9081, as amended by Laws 1917, ch. 268, §1, since amended by Laws 1919, ch. 262, §1.)

A literal reading of the clause requiring that the building should be completed within the estimated cost thereof, would give plausibility to the plaintiff's argument. We consider it quite clear, however, that such an interpretation would do violence to the spirit and purpose of the statute. The legislature can hardly have intended that where, as in the present case, it is found impossible to erect a suitable building for the amount of the original estimate, the board must nevertheless, despite any obstacles or changed conditions, proceed to put up such an edifice as the bonds already voted would pay for. For instance, probably no one would question its right to submit a proposition to vote additional bonds to meet the cost required by a revised estimate. The purpose of the statute seems to be to prevent the board from creating a debt against the public to be paid in the future, except where that has been authorized by a vote—to prevent the creation of a deficiency by contracting for expenditures to meet which no fund has been provided. Obviously, the effect is not to prevent the spending of more money in building than has been specifically voted by the people, because the statute already referred to expressly authorizes an annual levy· of a two-mill tax for the construction and repairing of school buildings. If·a board has on hand, or can raise by the tax per-

mitted in the current year, a sufficient fund to pay for such a building as is found to be necessary, there can be no occasion for issuing bonds. And if a part of the amount necessary to pay for the construction of a new building is available from a fund on hand or from the proceeds of current taxes, there can be no occasion for issuing bonds beyond the sum needed to make up the difference. We interpret the statutes as permitting the board to incur such expense in the erection of a school building as may be met from the proceeds of the bonds and the levy of a two-mill tax.

The plaintiffs invoke the rule that has been announced in a number of cases, that the proceeds of a tax levied for the current expenses of a public corporation—a part of the general revenue fund—cannot be used to pay for permanent improvements, such as the construction of buildings. That rule does not apply here, because the tax the proceeds of which it is proposed to use as a part of the building fund was not levied for current expenses, but specifically for the purpose to which it is proposed to be devoted.

It is urged that the adoption of the second estimate amounted to an abandonment of the proceedings under the first—that the voters at the election approved a proposal to erect a building that should cost $50,000, not one costing $92,500. This we regard as essentially a restatement of the proposition just discussed. The election authorized the issuance of bonds to the amount of $50,000 to be used in the erection of a school building. It is true that this action was taken upon the theory that the sum so raised would of itself be sufficient for the purpose. The present proceedings are based on the theory that the proceeds of the bonds will still be sufficient, when supplemented by funds from other sources which are available for the purpose. We have already held the procedure to be legal, and we think it follows that the plan now being followed is not an abandonment, but a modification, of that originally adopted.

3. It was likewise not an infringement of the statute for the board to provide for the construction of a building at a cost of $10,000 in excess of the proceeds of the bonds and the tax, upon that amount being placed at its disposal for such purpose by individuals who were willing to make this contribution to the building fund. Such restrictions are intended

to protect the taxpayers by limiting their liability in the matter, and not to prevent the acceptance and utilization of voluntary contributions in aid of public enterprises. This has been determined in several cases arising under similar statutes. (*Anderson v. Cloud County,* 83 Kan. 419, 111 Pac. 464; *Schaake v. Douglas County,* 98 Kan. 801, 160 Pac. 207.)

4. The tax levy referred to, which was made August 5, 1918, was expressed to be for the purchase of sites and the construction and equipment of buildings, "for the year commencing January 1, 1919." The statute provides that the board shall in August in each year levy a tax for the support of the schools of the city, including building and repairs of school buildings, "for the fiscal year commencing on the 1st day of July last preceding the month of August in which such levy shall be made." (Laws 1907, ch. 330, § 1; Gen. Stat. 1915, §9079.) Whatever irregularity there may have been in the designation of the period to which the tax was to apply we regard as unimportant. Its proceeds would not be available before January, and the reference to the year as beginning then could not invalidate the tax, the fiscal year being fixed by statute.

The statute authorized the levy of a tax for the support of schools, not exceeding 8 mills, and "for the purchase of sites and for the construction and repairing of school buildings," not exceeding two mills. (Laws 1917, ch. 324, § 1.) In the present case an eight-mill levy was made "for the payment of teachers' salaries, school officials, incidentals, repairs and improvements, supplies and maintenance of the schools," and a two-mill levy "for the purchase of sites and the construction and equipment of buildings." The plaintiffs suggest that if the entire two-mill levy is expended for the building, and a part of the eight-mill levy is used for repairs to buildings, more than two mills would be devoted to "the purchase of sites and for the construction and repairing of school buildings," the statutory maximum for that purpose being thereby exceeded. This result can be avoided by interpreting the word "repairs," as used in the resolution providing for the levy, as not intended to apply to repairs to buildings. Criticism is also made of the fact that the two-mill levy covered the equipment, as well as the construction, of buildings. The total tax

is within the prescribed limit of ten mills, and if the proceeds
of the two-mill tax are used in the construction of the build-
ing there can be no excess on any item.

5. It is further contended that the record shows that the
building proposed to be erected was intended to be used other-
wise than as a schoolhouse. In the formal action taken by
the board it was described as an industrial-training school. In
some of the unofficial and preliminary expressions regarding
it, it was spoken of as a "community house." Some of the
individuals who showed an especial interest in encouraging
the enterprise indicated that they expected the building to
furnish a place for entertaining in a wholesome and effective
manner the soldiers at Fort Leavenworth; and the organiza-
tion which provided the ten-thousand-dollar aid to the con-
struction—a branch of the association of Rotary Clubs—had
in mind its use as a community house. These facts do not im-
press us as establishing that the proposed building is not such
as the school board is authorized to provide. The board pro-
poses to erect a building authorized by the statute as an in-
dustrial-training school. If after its construction any attempt
is made to use it for an unlawful purpose, means may readily
be found to prevent a violation of the law. The statute, how-
ever, already permits the use of school buildings in cities of the
first and second class for various public purposes other than
the giving of formal instruction in prescribed studies; for in-
stance, the accommodation of "improvement associations,
scientific, mechanical or agricultural societies." (Gen. Stat.
1915, § 9077.) It is not an essential part of our school system
that the public shall obtain no benefit from the buildings it has
erected except during the hours they are occupied by the
pupils. The movement for the use of school buildings for
civic centers is generally recognized as a wholesome one.

6. A final contention is that the terms of the donation of
the ten-thousand-dollar aid were such as to make it unavail-
able for use in the construction of a school building. As al-
ready indicated, this money was obviously given in the ex-
pectation that the public would derive some advantage from
the building other than as a place for giving formal instruc-
tion to pupils. But the organization which furnished the
money must be presumed to have known, and undoubtedly did

know, that any building erected by the school board, acting in its official capacity, must be primarily one for school purposes, affected by whatever limitations in its use the law may impose.

The judgment is affirmed.