No. 32,794

BOARD OF EDUCATION OF THE CITY OF EL DORADO, *Plaintiff*, v. ED J. POWERS, State Auditor (Revived in the name of George S. Robb), *Defendant.*

(51 P. 2d 421)

Opinion filed November 19, 1935.

*J. B. McKay,* of El Dorado, for the plaintiff.

*Clarence V. Beck,* attorney general, and *Theo. F. Varner,* assistant attorney general, for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the state auditor to register certain bonds presented to him by the board of education of the city of El Dorado, a city of the second class.

The board of education adopted a resolution containing a statement that the crowded condition of the high school and junior college makes it necessary that a new building be built, and that in order to erect such new building it is necessary to vote bonds, and that the estimated cost of the building is $360,762, and of furnishing it $30,738, or a total of $391,500; that the board of education had filed an application through the federal emergency administration of public works for a loan and grant amounting to 45 percent of the total cost or $176,175, of which $162,343 may be used for the same purpose for which bonds will be issued, namely, the erection of the new building, and resolving that the board of education finds it necessary to erect a new building and to furnish it at the estimated cost as above stated, and that in addition to the $162,343 to be obtained by the grant from the federal emergency administration of public works, it is necessary in order to erect such building to issue bonds in the sum of $198,500. It was further resolved that a copy of the resolution be certified to the mayor of the city of El Dorado and he be requested, in accordance with the statute, to issue a proclamation for holding an election to vote bonds to said amount, the proclamation to be published in the official city paper. The resolution contained a statement of the proposition to be submitted, viz.:

"Shall the Board of Education of the city of El Dorado issue bonds in the amount of one hundred ninety-eight thousand five hundred dollars ($198,500) for the purpose of erecting a school building?"

Pursuant thereto, the mayor called a special election, the notice

stating the proposition to be submitted in the same language as quoted above: At the election the ballot used stated the proposition submitted in the same language. The election resulted in a vote of 872 for and 397 against the bonds. Thereafter, under proceedings about which there is no controversy, the board of education issued the bonds and they were thereafter presented for registration to the state auditor, who refused to register them, basing his refusal on the ground that the special question or proposition submitted to the electors did not clearly state the proposed project for which the bonds were to be issued and as a consequence the board is without power and authority to issue the bonds. Following the auditor's refusal, the board of education filed the present action.

The writ of mandamus is a discretionary writ; it does not issue as a matter of right, but only in a clear case. (*State, ex rel. Wells, v. Marston,* 6 Kan. 524; *Shellabarger v. Comm'rs of Jackson Co.,* 50 Kan. 138, 32 Pac. 129; *City of Potwin Place v. Topeka Rly. Co.,* 51 Kan. 609, 33 Pac. 309; *Arends v. City of Kansas City,* 57 Kan. 350, 46 Pac. 702; *Kolster v. Gas Co.,* 106 Kan. 84, 186 Pac. 738; *Railway Co. v. City of Liberal,* 108 Kan. 836, 196 Pac. 1067; *Construction Co. v. Mason,* 109 Kan. 373, 198 Pac. 966; *Drainage District v. Wyandotte County et al.,* 117 Kan. 369, 375, 232 Pac. 266, 268; *State, ex rel., v. Bradbury,* 123 Kan. 495, 256 Pac. 149; *State, ex rel., v. McCombs,* 125 Kan. 92, 262 Pac. 579; *State, ex rel., v. Miami County Comm'rs,* 133 Kan. 325, 299 Pac. 965; *State, ex rel., v. Ellis,* 135 Kan. 702, 11 P. 2d 708; *City of Iola v. Hobart,* 141 Kan. 709, 42 P. 2d 977.

The question presented here is whether the election proclamation and the ballot clearly stated the substance of the proposition.

It may be observed that the bonds in question here are issued by a board of education under a resolution which is not required to be published as is the ordinance of a city, and therefore the question whether a required publication, which likewise covered the details required to be stated in the notice, might be given the force of a public law, is not before us. (See *Chanute v. Davis,* 85 Kan. 188, 190, 116 Pac. 367; *City of Perry v. Davis,* 97 Kan. 369, 370, 154 Pac. 1127.) In this case all the electorate may be informed and learn from legal publications is that the board of education asks authority to issue bonds in the sum of $198,500 for the purpose of erecting a school building. The board of education is proceeding under R. S. 72-1820, 72-1821, which authorize the issuance of bonds in the manner provided by law. R. S. 10-120 provides that notice

of the election shall set forth the time and place of holding the election and the purpose for which the bonds are to be issued. The resolution asking the mayor to call the election clearly shows a proposed expenditure of a sum almost twice as great as the amount of bonds to be voted, and it shows in detail how it is proposed to get the entire sum to be expended. It excludes any intention of erecting a school building for the amount of the proceeds of the bonds, and it is a fair inference from the resolution that no school building would be built if for any reason federal moneys were not obtained. The proposition as submitted showed only the board desired authority to issue $198,500 of bonds for the purpose of erecting a school building. The voter who saw the election proclamation, read it and noted the date, and thereafter went to the polls and voted had no means of knowing that it was proposed to erect a building which when erected and equipped would cost over $390,000. The voter reading the proclamation might have been willing the board spend $198,500 and he might have voted therefor, or he might have been indifferent and not have objected to an expenditure of that amount and not have taken the trouble to vote. Had he known that almost double that amount was to be expended, he might have reasoned that a $390,000 expenditure meant increased costs for maintenance, supervision and upkeep, a larger school and a more expensive establishment than he thought necessary or advisable, and have voted against such an issuance. Plaintiff argues that the excess cost is to be paid through a federal agency and that it will not cost the taxpayer nor increase his burdens, but that is not entirely true, or if it were, he was entitled to know it when he was legally advised there was to be an election.

Plaintiff argues that under *Wright v. Board of Education,* 106 Kan. 469, 188 Pac. 439, it is proper for the board to accept outside donations and expend them in the erection of a building. The facts in that case were that an election for bonds had been legally held. Thereafter it was discovered that owing to increased cost of labor and materials the bond proceeds, supplemented by a donation, were not sufficient to erect the building called for by the plans, even though its original estimated cost was within the bond issue. The real issue in the case was the right of the board of education to levy a certain two-mill tax under a claimed pertinent statute. It was held the board was not prevented from accepting the contribution That case, however, does not support the plaintiff's claim here,

where the board of education, at the inception of the project, contemplated the use of federal moneys in addition to the proceeds of the bonds, to erect a building estimated to cost when furnished the sum of $391,500.

Our attention is directed to *City of Iola v. Hobart,* 141 Kan. 709, 42 P. 2d 977. In that case the notice under which the bonds were issued was held to limit the total cost to the amount therein expressed.

A situation similar to that now before us was involved in *Kansas Electric Power Co. v. City of Eureka,* ante, p. 117, 45 P. 2d 877, where the city embarked on projects looking to the construction of an electric light and power plant. It made a certain contract with a manufacturing concern for the purchase of machinery and equipment, the cost to be paid out of the earnings of the plant in the future. This contract was contingent upon the outcome of an election to vote bonds in the sum of $65,000 to provide moneys to erect the necessary buildings and the poles, lines, transformers, etc., to distribute power. In the call for the election the proposition was thus submitted:

"Shall the city of Eureka, Kan., issue sixty-five thousand dollars in bonds, the same not to run longer than twenty (20) years, and to bear interest not to exceed five (5) percent per annum and to be issued to mature in installments of approximately equal amounts each year, for the purpose of constructing an electric light distributing system, power-plant building and appurtenances thereto, for the purpose of supplying said city and its inhabitants with electric current for lighting, power and other purposes?" (pp. 118, 119.)

It is to be observed that this proposition standing alone might be said to be clear and definite, but when considered with the entire plan it is apparent the electorate was only called upon to vote on a part thereof and was not informed as to the whole situation. In determining sufficiency of the proposition submitted it was said:

"The election law contemplates that when a special proposition is submitted to a popular vote the recitals on the ballot shall clearly state the substance of the question the electors are to vote upon; and where that proposition is so obscurely stated that the electors may be misled thereby, the election is vitiated; and tested by this rule, the proposition as stated on the ballot, set out in full in the opinion, was so equivocal in its text and so obviously apt to mislead, that the bond issue sought to be issued pursuant to a majority vote thereon should be enjoined." (Syl. ¶ 2.)

In the opinion it was said:

"On the question whether the proposition which appeared on the ballot, and on which the electors of Eureka were asked to express their wishes at the

ballot box was misleading, it seems that the point raised by plaintiffs is well taken. The fair import of the recitals on the ballot was that the $65,000 bond issue, which the voters were asked to sanction, would provide the requisite funds to procure the desired municipal light and power plant. It may be conceded that a critical analyst of language construction could make a specious argument that the recitals on the ballot only meant that the cost of a distributing system and the cost of a power-plant building were to be met out of the bond issue; and that the words 'appurtenances thereto' referred to appurtenances restricted to the distributing system or to the power-plant building, or to both, but did not mean appurtenances to the power plant. But the election was held to take the opinion and judgment of common men and women who are not trained in the niceties of language; and it is undeniable that the concluding language of the ballot, 'for the purpose of supplying said city and its inhabitants with electric current for lighting, power and other purposes,' not only would lead the voters to assume that was exactly what they were voting for, but would tend to obscure the idea that it was only a part of a municipal plant they would get for their bond issue.

"Our election laws contemplate that when a special proposition is submitted the ballot shall clearly state the substance of the proposition. If the proposition on the ballot is stated in equivocal terms the purpose of the election is vitiated in advance. (R. S. 25-605; R. S. 10-120; *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400; 44 C. J. 1138.)" (pp. 121, 122.)

The bonds in this case have not been registered, and whether or not there has been any arrangement made for their sale, they have not been sold and delivered and the proceeds received by the board of education. Therefore, we do not have before us a situation where by reason of delay in instituting action rights of third parties may have intervened. As was said in *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618:

"Technical questions as to the validity of a bond issue should be raised early or waived—for the good of the municipality itself as well as for the protection of those who invest in the bonds. (*Finnup v. School District,* 94 Kan. 695, 146 Pac. 349; 148 Pac. 245.)" (p. 842.)

See, also: *The State, ex rel., v. Comm'rs of Kiowa County,* 39 Kan. 657, 19 Pac. 925; *The State v. Wichita County,* 62 Kan. 494, 64 Pac. 45; *South Hutchinson v. Barnum,* 63 Kan. 872, 66 Pac. 1035; *Ritchie v. City of Wichita,* 99 Kan. 663, 666, 163 Pac. 176, and Note 86 A. L. R. 1057, 1096.

In the case before us the question of the sufficiency of the notice has been timely raised. In our view, the notice of the election did not clearly and fully apprise the electors of what the board of education proposed to do in erecting the new building, and for that reason the notice of the election and the proposition as stated on the ballot were insufficient.

The application for the writ of mandamus is denied.