No. 26,775.

JAMES E. THOMAS, as Mayor, etc., and the BOARD OF COMMISSION-
ERS OF THE CITY OF TOPEKA, *Plaintiffs,* v. ETTA M. COVELL, as
City Clerk, *Defendant.*

### SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Election on Question of Bond Issue—Ballots—
Instruction to Voters.* When several propositions to issue municipal bonds
for various purposes, including acquisition of land, erection of public build-
ings, and making public improvements, are submitted on one ballot, to-
gether with a proposition to sell real estate, the instruction to voters re-
quired by R. S. 25-605 should be printed across the top of the ballot, and
the instruction required by R. S. 10-120 should be printed after each bond
proposition.

2. SAME—*Election on Question of Bond Issue—Ballots—Dual Propositions.* A
proposition in the form following is not dual, but presents a single municipal
project, to be approved or disapproved as a whole:

"Shall the mayor and board of commissioners of the city of Topeka be
authorized and directed to acquire land for a site in the city of Topeka and
establish and construct a public library building thereon, and to issue bonds
of said city in a sum not exceeding $275,000, as provided by law, to pay
therefor?"

Original proceeding in mandamus. Opinion filed November 7, 1925. Writ
denied.

*Ralph T. O'Neil* and *John M. Williams,* both of Topeka, for the plaintiffs.
*Harry W. Colmery* and *James E. Smith,* both of Topeka, for the defendant.

The opinion of the court was delivered by

BURCH, J.: In form the action is one of mandamus by the mayor
and board of commissioners of the city of Topeka, a city of the
first class, to require the city clerk to perform a legal duty. The
purpose of the action is to obtain a declaratory judgment respect-
ing proper form of ballot to be used at a bond election to be held
in the city. The controversy arises in this way: The mayor and
commissioners, as the governing body of the city, have prescribed
the form of ballot. The city clerk is charged with the duty of pre-
paring and printing the ballots. She contends the prescribed form
does not comply with the law governing the subject, and refrains
from preparing and printing ballots as directed.

1. Municipal Corporations, 28 Cyc. p. 1590.  2. Id., 26 L. R. A., n. s., 665; 5
A. L. R. 538; 19 R. C. L. 999.

In the case of *City of Oswego v. Davis*, 97 Kan. 371, 154 Pac. 1124, the court said:

"In so important a matter as the issue of municipal bonds, the statutes authorizing them should be carefully studied and closely followed in all the proceedings leading up to their registration."   (p. 375.)

In this instance, careful study of the statutes revealed overlapping provisions relating to the instruction to voters to be printed on the ballot, making it hazardous to act without an authoritative interpretation, and the original jurisdiction of this court in actions of mandamus was properly invoked, pursuant to the declaratory judgment act.

The purpose of the election is to submit to the voters, for approval or disapproval, a comprehensive program of municipal improvement.   Thirteen propositions involve bond issues totaling approximately four million dollars for various purposes, including acquisition of land, erection of public buildings, and making public improvements.   The fourteenth proposition relates to sale of real estate—an existing fire station.   It is desirable to use but one ballot at the election.   For purposes of the decision, only one bond proposition need be considered.

The public library building of the Topeka Library Association, known as "the city library," stands, by license of the legislature granted in 1881, on the square of ground on which the state capitol is situated.   The state senate, by resolution adopted at the 1925 session of the legislature, instructed the proper state officers to request removal of the building.   The resolution recites that the building is inadequate and out of harmony with its surroundings, and the first question on the proposed ballot reads as follows:

"SHALL THE FOLLOWING BE ADOPTED?

"Shall the mayor and board of commissioners of the city of Topeka be authorized and directed to acquire land for a site in the city of Topeka and establish and construct a public library building thereon, and to issue bonds of said city in a sum not exceeding $275,000, as provided by law, to pay therefor?"

R. S. 10-120 relates to bond elections in any case in which an election is a condition to issuance of bonds.   The procedure, from the call for the election to declaration of result, is prescribed.   The form of ballot, so far as material here, follows:

"Upon such ballot shall be printed the bond proposition submitted, preceded by the words 'Shall the following be adopted?' and followed by the

words 'To vote in favor of the bonds make a cross ✕ mark in the square after the word "yes."' 'To vote against the bonds make a cross ✕ mark in the square after the word "no,"' followed by sufficient squares. If more than one proposition or question be submitted on said ballot the different propositions or questions shall be separately numbered and printed and be separated by a broad solid line one-eighth of an inch wide."

Inasmuch as the election here provided for is a bond election, the words "If more than one proposition or question be submitted," must be read, "If more than one bond proposition or question be submitted."

R. S. 10-121 reads as follows:

"Whenever any election is required to authorize the acquisition of land for, or the making of any public improvement, and such proposition is coupled with the proposition of the issuance of bonds and the levy of taxes to pay for same, such election shall be held in all respects as provided for bond elections alone, except when such election is held at the same time as a general election."

The court interprets this section to mean that, when the proposition is to acquire land and issue bonds for the price, or the proposition is to make improvements and issue bonds for the cost, the proposition is essentially a bond proposition, and the election, including form of ballot, is to be held in all respects as a bond election.

The city clerk suggests that the library proposition is dual: It calls for purchase of a site, erection of a new building, and a bond issue to pay for site and improvement. Voters may be in favor of purchasing a site, which could be done with the proceeds of a small tax levy, and removing the old building to the new site. They may be in favor of purchasing a site and erecting a new building, but not by means of a bond issue. Under the proposition as framed, they have no opportunity to express these preferences. That is true. But the reason it is true is that the proposition is single. Procuring a site, erecting a building, and paying for site and building by bonds, are not tendered as disconnected subjects to be separately considered and voted on. They are tendered combinedly, as constituting one municipal project, to be approved or disapproved as a whole, and the proposition is to be read as R. S. 10-121 contemplates: "Shall bonds be issued to purchase a site and erect a library building?"

When the election is held at the same time as a general election, there must be some accommodation to the general election law

(R. S. 10-121). The pertinent provision of the general election law reads as follows:

"If there be more than one constitutional amendment, proposition or question to be voted upon, the different amendments, propositions or questions shall be separately numbered and printed, and be separated by a broad solid line one-eighth of an inch wide. Opposite and after each such amendment, proposition or question so submitted shall be printed two squares, one above the other. Preceding the upper one of such squares shall be printed the word 'Yes,' and preceding the lower one of such squares shall be printed the word 'No.' Across the entire width of said ballot, and at the top thereof, shall be printed in pica type the following instructions: 'To vote in favor of any question submitted upon this ballot, make a cross $\times$ mark in the square after the word "Yes"; to vote against it, make a similar mark in the square after the word "No."' " (R. S. 25-605.)

In 1903 a statute was enacted which reads as follows:

"The governing body of any city of the first class is hereby authorized to sell any real estate belonging to said city upon such terms and in such manner as shall be deemed for the best interest of said city.

"The proceeds arising from such sale may be applied by said city to the purchase of a site and the erection of a public building for said city.

"The governing body of any city of the first class is hereby authorized to issue the bonds of such city in such an amount as it may determine, for the purpose of purchasing a site or erecting a public building for such city, or both.

"No real estate of the value of two thousand dollars or upwards shall be sold nor bonds issued under this act until the proposition of making such a sale or issuance of such bonds, or both, shall have been authorized by majority of the legal voters voting thereon at a general election or a special election called by the governing body for that purpose.

"The proposition for the sale of any real estate or the erection of any public building, or both, shall be included in the mayor's proclamation for the election, at which election the form of the ballot shall be as provided by section 7 of chapter 177 of the Session Laws of Kansas, 1901, or amendments thereto as far as applicable, and as otherwise provided by law." (R. S. 13-1429 to 13-1433.)

The concluding clause "and as otherwise provided by law," was added in 1923. The law of 1901 referred to is the section of the general election law now appearing as R. S. 25-605, quoted above. The internal evidence is that this statute, although general in form, was enacted to meet the individual needs of some city.

As indicated above, a proposition to issue bonds to purchase a site, or a proposition to issue bonds to erect a public building, may be stated and submitted as a single project. Several propositions of this character may appear on a ballot prepared under the bond

election law. A proposition to sell real estate bears no relation to a bond election. How then, in view of the apparent conflict in the statutes, shall the ballot be prepared with respect to the instruction to be given to voters for their guidance in voting?

R. S. 13-1429 to R. S. 13-1433, and R. S. 25-605, are continuations of old statutes. R. S. 10-120 and R. S. 10-121 date from the revision of 1923. The election to be held in the city of Topeka is a bond election with respect to the first thirteen propositions. It is good practice to follow as literally as possible the statute relating to issuance of bonds, and consequently the court holds that the words "To vote in favor of the bonds," etc., should appear in the proper place in submitting each bond proposition.

The election is not a bond election with respect to the proposal to sell real estate, and more than one proposition is to be voted on at the election. Therefore, the ballot should carry across the top of it the matter specified in R. S. 25-605.

A suggestion that this form of ballot may be misleading is not deemed to be of consequence, since each bond proposition embraces but a single subject.

The court does not decide that, if a ballot prepared in accordance with R. S. 25-605, omitting the instruction to voters prescribed by R. S. 10-120, had been used, and bonds issued, such bonds would be invalid. The declaration is made on due application in advance of preparation of the ballot. Since the city clerk was directed to prepare ballots with no instruction to voters except that provided for in R. S. 25-605, her declination to do so was justified, and the writ is denied.