No. 33,856

THE KANSAS UTILITIES COMPANY, *Appellant,* v. THE CITY OF PAOLA, and THE STATE, ex rel. CLARENCE V. BECK, Attorney General, *Appellees.*

(80 P. 2d 1084)

Opinion filed July 9, 1938.

*Bernard L. Sheridan, L. Perry Bishop,* both of Paola, and *Douglas Hudson,* of Fort Scott, for the appellant.

*Robert E. Coughlin, Edward H. Coughlin* and *Archie A. Bryan,* all of Paola, for appellee City of Paola.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by the Kansas Utilities Company, a corporation, as a taxpayer in the city of Paola, to enjoin the issuance and disposal of general obligation bonds of that city in the sum of $225,000. Against plaintiff's petition the defendant city leveled a general demurrer and also filed a motion to dismiss the action for want of equity, both of which were sustained. From those rulings plaintiff has appealed.

We shall first consider the ruling on the demurrer. While the petition contained allegations concerning a mass meeting held in the defendant city, at which there was discussed, in connection with the report of an engineer, the subject of the city purchasing plaintiff's existing electric distribution lines, the parties have argued the ruling on the basis of the sufficiency of the ordinance, the notice of the election and the ballot. Copies of these various instruments were attached to the petition. The pertinent portions thereof were as follows.

"ORDINANCE No. 1458

"An ordinance providing for the calling of an election in and for the city of Paola, Kansas, for the purpose of submitting to the electors of said city the proposition of authorizing the said city of Paola and the governing body thereof to issue bonds in a sum not exceeding the sum of $225,000 for the purpose of purchasing, constructing, and building an electric light plant and the distribution lines for the purpose of supplying the said city and its inhabitants with electric current.

"Be it Ordained by the Mayor and Councilmen of the City of Paola, Kansas:

"SECTION 1. That an election be held along with the regular city election on the 6th day of April, 1937, for the purpose of submitting to the electors of said city of Paola, Kansas, the proposition of authorizing the governing body of said city to issue bonds in a sum not exceeding the sum of $225,000 for the purpose of paying the direct and indirect cost for the acquisition of the necessary land and right of way, and for the building and construction of an electric light and power plant, and the distribution lines for the purpose of supplying the said city and its inhabitants with electric current.

. . . . . . . . . . .

"SEC. 5. That the form of the ballots to be used at the said election shall be prepared and issued as required by law and upon such ballots shall be printed the following proposition, to wit:

" 'Shall the governing body of the city of Paola, Kansas, be authorized to issue general obligation bonds of said city in a sum not exceeding $225,000 for the purpose of paying the direct and indirect cost for the acquisition of the necessary land and right of ways and for the building and construction of an electric light and power plant, and the construction and purchase of distribu-

tion lines for the purpose of supplying the said city and its inhabitants with electric current.'

"That the said proposal shall be preceded by the words 'Shall the following be adopted,' and followed by the words,

" 'To vote in favor of the said bonds make a cross (✕) mark in the square after the word "Yes."

" 'To vote against the bonds make a cross (✕) mark in the square after the word "No," and followed by sufficient squares.' "

· · · · · · · · · · · · ·

"ELECTION PROCLAMATION

"And pursuant to Ordinance No. 1458, I, A. A. Bryan, mayor of the city of Paola, Kansas, by virtue of the authority in me vested by law hereby give further notice and proclaim that on the 6th day of April, 1937, an election will be held in said city at the places above mentioned in each of the respective wards of said city for the purpose of voting to authorize the governing body of the city of Paola, Miami county, Kansas, to issue general obligation bonds of said city in a sum not exceeding $225,000 to hereby obtain funds to purchase, build and construct an electric light plant and distribution lines for the purposing of supplying said city of Paola and its inhabitants with electric current."

· · · · · · · · · · · · ·

"CITY BALLOT

"Shall the following be adopted?

"Shall the governing body of the city of Paola, Kansas, be authorized to issue general obligation bonds of said city in a sum not exceeding two hundred twenty-five thousand dollars ($225,000) for the purpose of paying the direct and indirect cost of the acquisition of the necessary lands and rights of way and for the building and construction of an electric light and power plant, and the construction and purchase of distribution lines for the purpose of supplying the said city and its inhabitants with electric current.

"To vote in favor of said bonds make a cross (✕) mark in the square after the word 'Yes.'

"To vote against the bonds make a cross (✕) mark in the square after the word 'No.'"

The petition further alleged:

"10. After the calling of said election by the governing body of the city of Paola, the citizens of that city in their discussion of the proposed bond issue, in pursuance to the preliminary report of the said W. B. Rollins which constituted the initiation of the movement, and in pursuance to the notice of election, *understood* that in the event the proposed bond issue should carry it would be for the consideration of the governing body that the *existing distribution lines* of this plaintiff *might be purchased*. (Italics inserted.)

· · · · · · · · · · · · ·

"13. The defendant city and its governing body are now threatening to cause said bonds to be issued and tender the same for registration and offer

the same for sale, and said bonds are unauthorized by law and their issuance would be illegal in the following respects:

"(a) In section 1 of said Ordinance No. 1458, which constitutes the pretended authority for the calling of the election to vote upon the issuance of said bonds it is ordained that the election be held for the purpose of submitting the proposition of authorizing said bonds, 'for the purpose of paying the direct and indirect cost for the acquisition of the necessary land and right of way, and for the building and construction of an electric light and power plant, and the distribution lines for the purpose of supplying the said city and its inhabitants with electric current.'

"(b) While the authority for the calling of the election as so ordained does not provide in any way for the purchase of the distribution lines owned by this plaintiff, yet the ballot in pursuance to section 5 of said ordinance pretended to submit a proposition for the 'construction and purchase of distribution lines,' and the ballot upon which the voters registered their approval of the issuance of the bonds for the purpose of 'construction and purchase of distribution lines' contains a proposition entirely different from that which the ordinance ordained should be submitted and different from the proposal authorized to be submitted by the ordinance in question.

"(c) The form of the ballot submitted was misleading and confusing and submitted more than one proposition to the electors of the city of Paola in that by the language 'construction and purchase of distribution lines' it is impossible to determine what the proposal in this connection really intends." (Italics inserted.)

From the petition it is clear that plaintiff owned and was operating in the city of Paola electric distribution lines, and that the city authorities, whom we shall refer to as the city, had under consideration the subject of purchasing those existing lines and also the question of constructing its own lines and acquiring rights of way therefor, as well as the construction of a light and power plant and the acquiring of a site therefor. It is obvious the city did not intend to purchase the existing distribution lines and also to construct a new system of distribution lines. The question is, which of these propositions was submitted to the voters, the proposition of purchasing or the proposition of constructing new distribution lines, and for which of these propositions did the electors vote. That the city was fully authorized to submit either of these questions separately cannot be doubted. (G. S. 1935, 12-801.) That the city was likewise authorized to submit both propositions on the same ballot, by separately stating and numbering the respective propositions, in order to ascertain the preference of the electors, is equally clear. (G. S. 1935, 10-120, 25-605; *Lewis v. Comm'rs of Bourbon County*, 12 Kan. 186, 213.) The ballot plainly reveals there was no attempt to em-

ploy the latter method. It must be remembered the purpose and intent of G. S. 1935, 12-801, was not merely that of enabling a city to determine whether its electors desired to operate under a system of municipal ownership, but that it was calculated to enable the electors to determine the manner in which the city should acquire a municipal system in the event it desired such a system—that is, whether it would acquire such a system by purchasing the existing system or such part or parts thereof as it desired or by building and constructing a new system. The statute also provides for an election to determine whether the electors desired to vote bonds for an extension of such works irrespective of how it might have acquired the same. The statute reads: "for the purpose of purchasing, constructing or extending." It has been definitely held that the purchasing of an existing plant and the construction of a new one constitute separate and distinct methods of executing the design of acquiring a plant, and that the submission of a proposition to issue bonds "to purchase, procure, provide or contract for the construction of waterworks," is dual and for that reason illegal. (*Leavenworth v. Wilson*, 69 Kan. 74, 76 Pac. 400.) G. S. 1935, 10-120, expressly provides the notice of the election, in this case the mayor's proclamation, shall state not only the time and place but the *purpose* of the election. That statute further provides:

" . . . If more than one proposition or question be submitted on said ballot the different propositions or questions shall be separately numbered and printed and be separated by a broad, solid line one eighth of an inch wide. . . ."

To the same effect is G. S. 1935, 25-605. In other words, the obvious purpose and intent of these statutes was to make certain the question or questions to be voted upon should be clearly stated so that the electors might not be misled thereby. Unless clearly stated some electors may have voted for the purchase of the existing lines while others may have cast their ballot in favor of the construction of new lines, with the result that the mandate of the people, which the election was designed to obtain, constituted no mandate at all. In justice to the electors and in plain fairness to the parties owning an existing system, the lawmakers contemplated and plainly intended the proposition or propositions should be submitted in such manner as to promote clarity and not confusion and uncertainty. In keeping with this principle this court in *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 117, 122, 45 P. 2d 877, said:

"Our election laws contemplate that when a special proposition is submitted the ballot shall clearly state the substance of the proposition. If the proposition on the ballot is stated in equivocal terms the purpose of the election is vitiated in advance. (R. S. 25-605; R. S. 10-120; *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400; 44 C. J. 1138.)

"Our reports contain cases where want of clarity in the recitals of ballot propositions and other nonconformities in election matters have been held insufficient to vitiate the election (*State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618, and citations), but nothing in any of these has modified the rule announced in *Leavenworth v. Wilson,* supra."

The doctrine was reaffirmed in a recent mandamus action whereby it was attempted to compel the state auditor to register certain bonds which had been voted in the city of El Dorado for school purposes. (*Board of Education v. Powers,* 142 Kan. 664, 668, 51 P. 2d 421.) In that El Dorado case we concluded as follows:

"In the case before us the question of the sufficiency of the notice has been timely raised. In our view, the notice of the election did not clearly and fully apprise the electors of what the board of education proposed to do in erecting the new building, and for that reason the notice of the election and the proposition as stated on the ballot were insufficient." (p. 669.)

In the instant case the mayor's proclamation did not mention the purchase of a site for a power and light plant or the purchase or other method of acquiring the necessary lands for rights of way for distribution lines. Section one of the ordinance, which specifically ordained the purpose of the election, provided for the "building and construction" of distribution lines. Section five of the ordinance, however—which section specifically directed what should be submitted on the ballot—provided for the submission of two propositions, namely, the "construction *and* purchase of distribution lines." These two propositions, however, were not separately stated and numbered on the ballot. The city reminds us the title of the ordinance should be considered as well as section one of the ordinance, and that the title provided not only for the construction, but also for the purchase, of distribution lines. It contends the ordinance, the proclamation and the ballot should be construed together, and that they are substantially the same. We do not think they are substantially the same. Moreover, the contention, if it were sound, would not relieve the city from the effect of having improperly submitted two propositions on the ballot without having given the electors an opportunity to vote for either as against the other. Did the electors vote to purchase or to construct transportation lines? Did some of

them vote to purchase and did others vote to construct these lines? Frankly, we do not know. Plaintiff contends:

"No one can tell what those words really mean. One voter may well have intended by his affirmative vote to authorize the governing body either to purchase or construct distribution lines as in its judgment should be done. Another voter by his vote may well have intended to buy the existing lines and construct additional lines as extensions of the present lines, while another voter might have intended to purchase materials and construct an entirely new line. The ballot was ambiguous and misleading."

It seems to us the contention is sound. Appellee urges for our consideration *Thomas v. Covell,* 119 Kan. 684, 240 Pac. 574; *Pittsburg Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112; *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618, and *Robertson v. Kansas City,* 143 Kan. 726, 56 P. 2d 1032. We have again reviewed those decisions and do not find them in conflict with the views herein expressed. Some of those cases were discussed in the Eureka case, and still others in the El Dorado case. Touching, however, the McCombs and Robertson cases, it is well to bear in mind that the proposition submitted in each of them was held to be essentially single in character, a fact clearly disclosed in each of those opinions. It cannot, of course, be seriously contended that the methods of acquiring distribution lines by "purchase" and by "building and construction," are anything other than two separate and distinct methods of acquisition. The method of acquisition would be one or the other, and not both.

Both parties have cited cases from other jurisdictions. They have been noted, but a discussion of them is not deemed necessary in view of our own previous pronouncements on the principle involved in the instant case. The demurrer to the petition was improperly sustained and the ruling is hereby reversed.

Coupled with the demurrer the city joined a motion to dismiss the action for want of equity. This action was brought timely and before the bonds were issued. That an entirely different situation is presented from the standpoint of equities where an action is instituted without unnecessary delay, as in the instant case, than where a party is dilatory in presenting his complaints and the rights of third parties have intervened, has been clearly recognized in our previous decisions. (*Board of Education v. Powers,* supra, p. 669, and cases there cited.) Here the action was instituted promptly, the petition stated a cause of action, an appeal was perfected immediately, and the ruling sustaining the motion to dismiss is reversed.