No. 37,291

CITY OF COFFEYVILLE, a Municipal Corporation, *Plaintiff,* v. GEORGE W. ROBB, Auditor of the State of Kansas, *Defendant.*

(194 P. 2d 495)

Opinion filed June 1, 1948.

*Frank W. Liebert,* city attorney, and *Claude I. Depew,* of Wichita, argued the cause, and were on the brief for the plaintiff.

*Wm. P. Timmerman,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the brief for the defendant.

The opinion of the court was delivered by

Hoch, J.: This is an original proceeding in mandamus brought by the city of Coffeyville to require the state auditor to register certain bonds voted and issued by the city for the improvement, repair and extension of the municipal electric light plant. The issue is framed by the allegations of the alternative writ, issued on March 17, 1948, and those of the answer of the defendant. The question is whether the bonds were lawfully issued under the statute named therein.

Following a favorable vote at an election held in November, 1944, the city of Coffeyville issued bonds in the sum of $1,500,000 for the purpose of making repairs and extension of the municipal waterworks and light plant. These bonds were issued under G. S. 1935, 12-801. The waterworks project was completed but, owing to unfavorable conditions developing during the war, the whole project could not be carried out within the funds available.

On December 2, 1947, a special election was held on a proposal to issue $825,000 worth of bonds for the purpose of improvement, repair and extension of the light plant. The proposition carried and the bonds were issued accordingly. This bond issue raised the total

utility bonded indebtedness of the city to about eighteen percent of the assessed valuation of tangible property. Upon presentation of the bonds for registration under the provisions of G. S. 1935, 10-108, the state auditor declined, for reasons stated in his answer, to register the bonds, and this action followed.

Summarized, the reasons stated by the auditor for his refusal to register the bonds are as follows:

1. Chapter 139, Laws of 1947, being G. S. 1947 Supp. 13-1024, under which the bonds were issued, apparently does not authorize a city of the first class to issue utility bonds in excess of the fifteen percent debt limitation prescribed by G. S. 1935, 12-803.

2. There was a variance between the ordinance calling the bond election and the election notice and ballot, and that, therefore, "the notice calling the bond election may be defective" in that it did not sufficiently advise the voters as to the proposition they were voting upon.

3. The facts above stated raised legal questions among bond attorneys and buyers of bonds which the defendant should not be required to determine.

The statutes requiring special scrutiny are G. S. 1947 Supp. 13-1024 and G. S. 1935, 12-801 and 12-803.

Section 13-1024 reads as follows:

"For the purpose of paying for any bridge, viaduct, public building, including the land necessary therefor, for lands for public parks and developing the same, within or without the city, for the establishment and construction of crematories, desiccating or reduction works, including the land necessary therefor, within or without the city, or *for the improvement, repair or extension of* any waterworks, sewage disposal plant, electric light plant, crematory, desiccating or reduction work or other public utility plant owned by the city, *unless otherwise specially provided for* or for any other improvements or works not otherwise herein provided for, *and for the purpose of rebuilding, adding to or extending to the same from time to time, as the necessities of the city may require,* the city may borrow money and issue its bonds for the same; but no bonds shall be issued for such purposes unless the same are authorized by a majority of the votes cast at an election held for that purpose: *Provided, however,* That cities of the first class having a population in excess of one hundred forty-five thousand, may and are authorized to issue the bonds of such city for the purpose of paying for any of the improvements mentioned in this section and the land necessary therefor, without such bonds having been authorized by a vote of the people, but the total amount of bonds issued for such purposes shall not exceed the sum of twenty-five thousand dollars in any one calendar year. The city shall make provisions for the redemption of all such bonds at their maturity."

Section 12-801 reads as follows:

"That whenever and as often as a majority of the electors voting at an election heretofore held, or hereafter called and held, in any city shall vote in favor of the issuance of bonds of such city for the purpose of *purchasing, constructing or extending works* for the purpose of supplying such city and its inhabitants with natural or artificial gas, water, electric light, heating or street-railway or telephone service it shall be lawful for the governing body of such city, by ordinance duly passed, to direct the issuance of the bonds so voted as provided by law: *Provided,* That whenever it may be deemed necessary or advisable for such city to combine a water and electric-light plant, the same may be done, and a separate vote on each proposition shall not be required." (Italics supplied.)

Section 12-803 reads as follows:

"No bonds in excess of fifteen percentum of the assessed valuation of such city *shall be issued under the authority of this act."* (Italics supplied.)

Sections 12-801 and 12-803 are part of the same act, deriving from sections 1 and 4 of chapter 101, Laws of 1905.

It may be noted here that the city of Coffeyville is not affected by any bond limitation provided in chapter 10, article 3, G. S. 1935 and 1947 Supp. (10-301, 10-302, and 10-303). Section 10-301 refers only to counties, 10-303 refers only to cities of the second and third class, and 10-302 refers only to cities with a population of 50,000 or more. Coffeyville is a city of the first class with a population of less than 50,000.

When the bond issue of $1,500,000 was made, following the election in 1944, the only statute under which the bonds could be issued was section 12-801, which carried the fifteen percent limitation above noted. (12-803.)

Section 13-1024, under which the instant bonds were issued, was not then available to Coffeyville for the reason that it then carried a proviso that the act should be applicable only to cities with a population of more than 110,000, located in counties with an assessed tangible valuation of more than $150,000,000. In 1947, section 13-1024 was amended (Laws 1947, ch. 139) by eliminating the proviso so that it then became applicable to Coffeyville.

Both plaintiff and defendant call attention to features in the legislative histories of sections 12-801 and 13-1024 which they regard as favorable to their construction of 13-1024. We have examined this legislative history, but do not find its recital to be necessary here in determining the issue presented.

Defendant's first contention turns upon the effect of the words

"unless otherwise specially provided for" which appear in section 13-1024 and are noted in italics, *supra*. It will be noted that the opening portion of the section recites a number of purposes for which bonds may be issued. After the listing of these particular purposes, the following language appears: "or other public utility plant owned by the city, *unless otherwise specially provided for*," etc. (Italics supplied.) Defendant contends that the limiting clause "unless otherwise specially provided for" modifies all of the particular purposes enumerated for which bonds may be issued, including "the improvement, repair or extension of any water works, sewage disposal plant, electric light plant." Based upon this construction the defendant then argues that the purposes for which the instant bonds were issued are "otherwise specially provided for" under section 12-801, and that therefore it is not the legislative intent to make section 13-1024 available for such purposes. Otherwise stated, it is defendant's contention that section 13-1024 is only applicable in cases where other statutes do not provide for issuance of bonds for the purposes enumerated and that since section 12-801 does provide for issuance of municipal bonds for the *extension* of the light plant, these bonds could not be issued under section 13-1024. Or, if they could be so issued, the fifteen percent limitation contained in section 12-803 should be held to apply.

The plaintiff contends that the words "unless otherwise specially provided for" should be construed to modify only the one clause immediately preceding, which is "or other public utility plant owned by the city." The argument is that the evident legislative intent—after enumerating particular purposes for which the bonds might be issued—was to add a blanket classification covering any "other public utility plant owned by the city unless otherwise specially provided for" by statute. Furthermore, the plaintiff argues that if the words "unless otherwise specially provided for" are made applicable to all the preceding enumerated purposes, the statute would have little use, since there are other statutes providing for bond issues in most of the cases so enumerated.

We are inclined toward the construction advanced in this particular by the plaintiff. However, our decision in the case does not depend upon that construction. There are other persuasive considerations which support the plaintiff's position.

First, it will be noted that section 12-801 provides for bond issues "for the purpose of *purchasing, constructing* or *extending*"

(italics supplied) certain public utility works, including light plants, while section 13-1024 provides "for the *improvement, repair,* or *extension* (italics supplied) of certain plants, including light plants. The two statutes overlap as to *extensions,* but section 12-801 alone provides for *purchasing* or *constructing* such plants, while section 13-1024 alone provides for *improvement* and *repair* of such plants. *Purchasing* or *constructing* a light plant is a different project from *improving* or *repairing* one. Clearly, therefore, it cannot be said that the two statutes are coextensive in purpose. If we had before us bonds issued solely for the purpose of *extension* of the light plant, it might be argued that since either statute covers *extension,* section 13-1024 was not available in the instant case since they could have issued bonds for that purpose under section 12-801. But even in that event the argument would be based upon a construction making the clause "unless otherwise specially provided for" applicable to all the purposes enumerated.

There is another reason to sustain plaintiff's use of section 13-1024. It will be noted that following the language heretofore referred to in that section are these words: "and for the purpose of *rebuilding, adding to,* or *extending* to the same from time to time as the necessities of the city may require." (Italics supplied.) These words are not followed by any limitation similar to the clause "unless otherwise specially provided for." Clearly, even if that clause should be held to modify all the *preceding* enumerated purposes for bond issues, it is not applicable to the *succeeding* purposes just noted. It would require the drawing of a very fine distinction to say that *improvement, repair* and *extension* could not be carried out under a provision for *rebuilding* and *extension.*

We conclude that the bonds were properly issued under G. S. 1947 Supp. 13-1024, which contains no limitation as to the total amount of bonds which may be issued under it. If there is to be such a limitation it is a matter for legislative and not judicial action. Clearly, the fifteen percent limitation provided in section 12-803 relates only to bonds issued under that particular act. (*Belleville v. Wells,* 74 Kan. 823, 88 Pac. 47.)

We next consider the variance between the ordinance calling the bond election and the election notice and ballot.

The pertinent provision of the ordinance published first on November 5, 1947, reads as follows:

"PROPOSITION No. 1. Shall the following be adopted? Proposition to issue electric light plant bonds of the City of Coffeyville, Kansas, to the amount

of $825,000 for the purpose of improvement, repair and extension of the city's electric light plant to be used *in addition to the $1,500,000 of bonds voted November 7, 1944,* for the construction and extending the water and electric light plants . . ." (Italics supplied.)

The pertinent part of the notice of the special election first published on November 5, 1947, reads as follows:

"PROPOSITION No. 1. Shall the following be adopted? Proposition to issue electric light plant bonds of the City of Coffeyville, Kansas, to the amount of $825,000 for the purpose of improvement, repair and extension of the city's electric light plant."

The ballot that was used corresponded verbatim with the notice of the special election.

The variance to which defendant calls attention consists of the fact that the ordinance as adopted and published contained the words as shown in italics, *supra,* "in addition to the $1,500,000 voted November 7, 1944," while the notice of the special election and the ballot did not advise the voters that the proposed new bond issue was in addition to the bonds that had been voted three years prior thereto. We find nothing in this variance which tended to mislead the voters. It could hardly be assumed that the electors of Coffeyville did not know that bonds had been voted three years prior thereto for improvement and extension of the waterworks and light plant. It is not necessary in every new bond issue to recite that such issue is in addition to other bonds voted at different times in the past. If the proposed new bond issue had not been in addition to previous bond issues, it would not be necessary to make it.

There is no contention here that the statute (G. S. 1935, 10-120) which provides for calling of a bond election, the giving of the notice thereof, and the form and contents of the ballot, were not complied with. The statute provides that the notice of the bond election "shall set forth the time and place of holding the election and the purpose for which the bonds are to be issued"; that the ballot shall have printed thereon the bond proposition submitted, together with directions to the voters, not necessary here to set out. The notice and the ballot complied with these statutory requirements.

The defendant suggests that the failure to include in the notice and in the ballots the statement in the ordinance that the proposed bond issue would "be used in addition to the $1,500,000 of bonds voted November 7, 1944," may bring the case within the rule laid down in *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421.

The situation presented in that case was entirely different from the one before us. The El Dorado case involved a proposed erection and furnishing of a school building toward the cost of which the city expected to obtain federal funds in the amount of $162,343. The notice for the bond election did not refer in any manner to the federal funds which the city expected to procure, but simply submitted a proposition to issue bonds in the sum of $198,500, "for the purpose of erecting a school building." It was held that "the proposition was so obscurely stated the electors may have been misled thereby" and an application for a writ of mandamus to require the auditor to register the bonds was denied. In the opinion it was said:

"The resolution asking the mayor to call the election clearly shows a proposed expenditure of a sum almost twice as great as the amount of bonds to be voted, and it shows in detail how it is proposed to get the entire sum to be expended. It excludes any intention of erecting a school building for the amount of the proceeds of the bonds, and it is a fair inference from the resolution that no school building would be built if for any reason federal moneys were not obtained. The proposition as submitted showed only the board desired authority to issue $198,500 of bonds for the purpose of erecting a school building. The voter who saw the election proclamation, read it and noted the date, and thereafter went to the polls and voted had no means of knowing that it was proposed to erect a building which when erected and equipped would cost over $390,000. The voter reading the proclamation might have been willing the board spend $198,500 and he might have voted therefor, or he might have been indifferent and not have objected to an expenditure of that amount and not have taken the trouble to vote. Had he known that almost double that amount was to be expended, he might have reasoned that a $390,000 expenditure meant increased costs for maintenance, supervision and upkeep, a larger school and a more expensive establishment than he thought necessary or advisable, and have voted against such an issuance." (p. 667.)

The cogent reasons stated in that case in support of the conclusion that the voter was not fully advised as to the proposition upon which he was voting have no counterpart here. The bonds to be issued in the instant case were to be used for the purposes stated, and it is not contended that funds from any other sources would be available for such purposes.

*Drenning v. City of Topeka*, 148 Kan. 366, 81 P. 2d 720, involved the issuance of bonds for the erection of a municipal auditorium in Topeka. In its initial resolution, the city had used the word "auditorium," but when the ballot was prepared it used the phrase "a public building" which was the phrase found in the statute under

which the city proceeded. It was held that this variance did not invalidate the election.

It is unnecessary to review the many cases in which it was held that the voter was not sufficiently advised as to the proposition upon which he was voting. Among such cases the plaintiff cites *City of Iola v. Hobart,* 141 Kan. 709, 42 P. 2d 977, in which an election was held invalid because the proposition was submitted in a manner which inaccurately indicated that the proposed issue would be the maximum cost of the project, whereas the actual cost was considerably in excess of the amount indicated. Plaintiff also cites *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P. 2d 877, in which the election was invalidated because the notice and the ballot indicated that the proposed issue of $65,000 would be the cost of constructing a light plant, whereas the city had in fact obligated itself to spend an additional $99,000 from other sources.

*Kansas Utilities Co. v. City of Paola,* 148 Kan. 267, 80 P. 2d 1084, involved a bond election "for the purpose of purchasing, constructing, and building an electric light plant." It was held, in substance, that whether the city would "purchase" or "construct" new lines of its own were such separate and distinct methods of acquiring a municipally owned system that a ballot which submitted simply a proposition of voting "yes" or "no" on the question of whether the city shall "purchase and construct" distribution lines was so obscurely stated as to be misleading. In the opinion it was stated:

"Unless clearly stated some electors may have voted for the purchase of the existing lines while others may have cast their ballot in favor of the construction of new lines, with the result that the mandate of the people, which the election was designed to obtain, constituted no mandate at all. In justice to the electors and in plain fairness to the parties owning an existing system, the lawmakers contemplated and plainly intended the proposition or propositions should be submitted in such manner as to promote clarity and not confusion and uncertainty." (p. 271.)

In the opinion in that case a number of our preceding cases were cited, with attention called to their distinguishing facts. The fundamental principle running through all of the cases is that the notice and the ballot must be so definite and certain that the voters will know just what it is they are voting upon. We can find nothing in the instant case in the notice or in the wording of the ballot which rendered the proposition uncertain, or which tended to mislead the voters.

228

In view of the conclusions stated, we need not treat the third reason advanced by the defendant for refusing to register the bonds. The writ is allowed.