No. 44,852

CHARLES J. MASHETER, LONNIE PLATT, H. C. WOLFE, SR., HENRY THOELE, HARRY THOELE, JIM KENNEDY, FRANK ROSSENER and CONRAD B. HERMRECK, *Appellants,* v. CECIL E. VINING, VICTOR L. MONTAGUE, ARDYCE A. WILSON, GEORGE A. SNOW, HOBART L. BETZ and RALPH McCREA, Board Members of the Unified School District No. 288, Franklin County, State of Kansas, *Appellees.*

(426 P. 2d 149)

Opinion filed April 8, 1967.

*Eugene C. Riling,* of Lawrence, argued the cause, and *Edward T. Riling,* of Lawrence, was with him on the brief for the appellants.

*James D. Waugh,* of Topeka, argued the cause, and *Robert L. Webb, Ralph W. Oman, Philip E. Buzick, William B. McElhenny, James L. Grimes, Jr., Donald J. Horttor, Terry L. Bullock, Stewart L. Entz, Edward L. Bailey,* all of Topeka, and *Orville J. Cole,* of Garnett, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, C. J.: This is an action by resident tax payers of a unified school district to enjoin defendant school board members from issuing and selling general obligation bonds of the district, and to require defendants to conduct elections pursuant to K. S. A. 72-6756.

Summary judgment was entered for defendants, and plaintiffs have appealed.

The facts are not in dispute.

Pursuant to K. S. A. 72-6761, Unified School District No. 288, Franklin County, caused a notice of a school bond election to be published for three consecutive weeks in the Ottawa *Herald,* a daily newspaper of general circulation in the area. The notice was published on Friday of each of the three weeks.

The election was held on October 16, 1965, and the proposition carried by a vote of 590 to 554.

This action was filed on June 21, 1966.

Only two questions are presented.

The first concerns the published notice of the election, and plaintiffs' contention is this:

K. S. A. 72-6761, enacted in 1963, which pertains to bond elections in unified school districts, provides that the school board shall give notice of such bond election in the manner prescribed by G. S. 1949, 10-120, or any amendments thereto, and that such elections shall be held in accordance with the provisons of the general bond law.

K. S. A. 10-120 (formerly G. S. 1949, 10-120), enacted years ago as a part of the general bond law, provides that notice of a bond election—if published in a daily newspaper—shall be published on Wednesday or Thursday of each of the three consecutive weeks.

Here the published notice, which, incidentally, stated that the proposition was being submitted pursuant to K. S. A. 72-6761 and 10-101 *et seq.*—was published on Friday of each of the three weeks —instead of on a Wednesday or Thursday. It therefore is contended by plaintiffs that the notice of the bond election—not being published as prescribed by statute—was bad, and therefore the election held pursuant thereto was illegal and void.

The trial court held that K. S. A. 10-120 was modified by K. S. A. 64-102 (pertaining to legal publications—and last amended in 1949) which, in material part, provides that *all* legal publications and notices of whatever kind or character that may by law be required to be published a certain number of weeks or days, shall be and are declared to be legally published when they have been published once each week in a newspaper which is published at least once each week, such publication to be made on *any* day of the week upon which the paper is published—and therefore the notice was legally published.

In support of the trial court's ruling on this point defendants contend (1) that the requirement in K. S. A. 10-120 of publication on a Wednesday or Thursday if in a daily newspaper, applies only where no different procedure for giving notice of the election is specifically provided by law; (2) that the 1949 amendment of K. S. A. 64-102 specifically struck out the former requirement in that statute of publication on a Wednesday or Thursday if in a

daily newspaper, and (3) K. S. A. 1965 Supp. 72-67,114 (f), enacted in 1965 and being effective May 17 of that year, provides a specific procedure for the giving of notice of a bond election in any unified school district, and that such provision contains *no* requirement for publication only on Wednesday or Thursday.

In view of the 1965 enactment, the question whether the 1949 amendment of K. S. A. 64-102 had the effect of "modifying" the Wednesday-Thursday provision of K. S. A. 10-120, becomes academic. The 1965 enactment—found at K. S. A. 1965 Supp. 72-67,114 (f) and effective May 17 of that year—is a specific provision dealing with the specific subject of publication of notice of a bond election in a unified school district, and it, in material part, requires only that the notice be published "once each week for three (3) consecutive weeks." The notice here was published in September and October of 1965.

We hold, therefore, that publication of the notice on Friday of each of the three consecutive weeks was proper, and that—regardless of its reasoning—the trial court was correct in so concluding.

The other question in this case concerns the provisions of K. S. A. 72-6756, which has to do with the closing of "attendance facilities." As here material, it provides that the board of a unified school shall not close any attendance facility that was being operated at the time the unified district was organized if at least three-fourths of the territory of the district which formerly owned such building is included in such unified district unless and until a majority of the resident electors within the attendance center of such attendance facility shall give their consent to such closing. The consent may be given in writing in the form of a petition, or the board may submit the question to a vote of such resident electors in the attendance center at the meeting called for that purpose—after notice.

In their petition in this case plaintiffs alleged there were attendance facilities for grade school children at Richmond, Lane and Rantoul, none of which had been legally closed; that no election had been held in regard to their closing pursuant to K. S. A. 72-6756, and that plaintiffs did not know whether the board intended to hold elections for that purpose. The petition sought an order requiring the board to conduct elections pursuant to the mentioned statute.

The question therefore narrows down to this:

Is the board of a unified school district required, under K. S. A.

72-6756, to obtain consent to close attendance facilities *prior* to the issuance of bonds voted at an election held pursuant to K. S. A. 72-6761?

The trial court ruled that it is not—and we think properly so.

The authority to issue bonds arises solely from a bond election held pursuant to K. S. A. 72-6761, which provides that "upon the affirmative vote of the majority of those voting thereon, the board shall be authorized to issue such bonds." The statute contains no other prerequisite or condition precedent.

Under K. S. A. 72-6756, summarized above, it is required that consent be given before an attendance facility may be closed, but we find nothing in that or any other statute which requires that such consent (to close an attendance facility) be obtained prior to the issuance of bonds to finance a new school building. Each of the mentioned statutes operates in its own field.

We hold, therefore, that consent to close an attendance facility under K. S. A. 72-6756 is not required prior to the issuance of bonds voted at an election held pursuant to K. S. A. 72-5761.

The trial court correctly disposed of this case and the judgment is affirmed.