No. 45,468

UNIFIED SCHOOL DISTRICT No. 259 (WICHITA), Sedgwick County, State of Kansas, a Municipal School Corporation and Corporation for Public Purposes, *Appellant,* v. CLAY E. HEDRICK, Auditor of the State of Kansas, *Appellee.*

(454 P. 2d 536)

Opinion filed May 17, 1969.

*Lawrence E. Curfman,* of Wichita, argued the cause, and *Donald A. Bell, Spencer L. Depew,* and *Paul M. Buchanan,* all of Wichita, were with him on the briefs for the appellant.

*O. R. Stites, Jr.,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the briefs for the appellee.

*George Stallwitz* and *James R. Schaefer,* both of Wichita, as *amici curiae.*

*Laurence S. Holmes,* of Wichita, was on the brief for Dale W. Bruce, as *amicus curiae.*

The opinion of the court was delivered by

KAUL, J.: This is an action in mandamus to compel the State Auditor (defendant-appellee) to register a temporary note in the amount of $100,000.00, issued by plaintiff-appellant (Unified School District No. 259), pursuant to alleged authorization by electors at a special school district election on September 20, 1966. In refusing

to register the note the State Auditor relied on *Board of Education v. Powers*, 142 Kan. 664, 51 P. 2d 421. Relying primarily on that case, the district court overruled plaintiff's motion for summary judgment; sustained that of defendant, and filed a comprehensive memorandum opinion in which many cases dealing with the subject were reviewed. This appeal followed.

Dale W. Bruce, individually, in support of plaintiff, and George Stallwitz and James R. Schaefer, jointly, in support of defendant, were granted permission to appear as *amici curiae* and have filed helpful briefs.

At the time of the district court's ruling, it is conceded the case was ripe for summary judgment.

Two questions are presented: (1) Under the facts, was the proposition misleading in that it failed to apprise the voters that the proceeds from the sale of bonds were to be used in connection with other funds? (2) Was the ballot at such election defective in that more than one proposition was submitted, which propositions were not separately numbered and printed and separated by a broad solid line ⅛th of an inch wide?

The facts are undisputed. They are gathered from the transcript of school board proceedings submitted with the note to the defendant, the pleadings, a stipulation of the parties, and several exhibits which were submitted with the motions for summary judgment.

Plaintiff district encompasses the City of Wichita and its environs. It is said to be the most populous school district in the state. It serves approximately 70,000 students in 113 attendance centers. It has an area of about 150 square miles and had an assessed tangible valuation in excess of 500 million dollars in 1967.

On July 1, 1965, plaintiff became the successor to School District No. 1, Sedgwick County, which had maintained a building fund levy pursuant to K. S. A. 72-1047, *et seq.* Upon the disorganization of School District No. 1, the unencumbered net balance in the building fund amounted to $1,203,627.81, which became an asset of plaintiff upon unification.

On July 1, 1965, plaintiff's board adopted a resolution authorizing a capital outlay fund levy (said to be in effect the same as a building fund levy). The capital outlay fund, as provided in the resolution, was to be produced by a 3.938 mill levy for not to exceed five years. The unencumbered balance in the capital outlay fund

on August 1, 1966, when the board initiated action on the bond resolution in question amounted to $1,800,876.11. On June 30, 1967, the fund had a net balance of $1,592,006.71.

In addition to the sums produced by the building fund levies, the record discloses that on August 12, 1966, $286,000.00 from federal funds were allotted to the use of plaintiff to aid in constructing and equipping vocational school facilities for the fiscal year 1966. It was stipulated that plaintiff's board on August 1, 1966, knew of the forthcoming allotment of federal funds.

At a regular session of plaintiff's board on August 1, 1966, the district superintendent discussed building needs of the district, set out in a report of the Citizens' Planning Council for School Facilities. The estimated costs of needs described in the report ranged up to 30 million dollars. At this meeting the superintendent also reported to the board that federal funds in the amount of $286,000.00 for a vocational education building had been allotted and an additional $150,000.00 would probably be available. Following the discussion a motion to submit a proposition to the electors of the district to vote bonds in an amount between 15 and 18 million dollars was passed. The session was then adjourned to August 3, 1966.

At the adjourned regular session, on August 3, 1966, a motion was passed that the bond election include the areas designated under Priority No. 1 and No. 2 Projects, recommended by the Citizens' Planning Council for School Facilities. The projects referred to totaled 14 in number and contemplated purchase or improvement of school sites and to construct, equip, furnish, repair, remodel or make additions to buildings and facilities used for school purposes by the district. The projects totaled 27 million dollars in estimated costs and ranged in cost per project from one-half to four million dollars each.

A resolution was then adopted declaring it necessary to issue bonds in accordance with the provisions of K. S. A. 72-6761 and directing the president and clerk of the board to cause notice of the election to be made in accordance with the provisions of K. S. A. 1965 Supp. 72-67,114 (f) (Repealed by Laws of 1968, Ch. 59, Sec. 45).

The ballot proposition contained in the resolution and submitted to the voters is as follows:

"Shall the Following be Adopted?

"Proposition to issue general obligation bonds of Unified School District No. 259 (Wichita), Sedgwick County, State of Kansas, in the amount of $15,-000,000 for the purpose of paying the costs to purchase *or* improve school sites *or* to construct, equip, furnish, repair, remodel, *or* make additions to buildings and facilities used for school purposes of Unified School District No. 259 (Wichita), Sedgwick County, State of Kansas, under the authority of K. S. A. 72-6761.

"To vote in favor of the bonds, turn down the voting pointer over the word 'Yes'.

"To vote against the bonds, turn down the voting pointer over the word 'No'.

"Yes             ☐

"No               ☐" (emphasis supplied.)

The proposition carried and thereafter the board determined to issue the Temporary Improvement Note in question. The note and a transcript of the proceedings were presented to defendant for registration, as required by K. S. A. 10-108. Defendant referred the transcript to the attorney general for approval. The attorney general refused approval on the grounds that the transcript indicated a total cost of impovements in the amount of 27 million dollars; that the amount of estimated expenditures in excess of the authorized bond issue was to come from the balance of the previous building fund levy, receipts from the capital outlay fund levy, as well as from grants of federal money; and, therefore, under the decision in *Board of Education v. Powers*, supra, the election proposition did not fully apprise the voters and was misleading.

Although defendant's refusal to register the note rested on the ground noted, the district court further held the ballot proposition defective because more than one proposition was submitted and not separately numbered and printed with one-eighth of an inch line separating the propositions as required by K. S. A. 10-120 of the general bond laws.

At this juncture we should note statutes pertinent to the proceedings under consideration. The board initiated the proceedings under K. S. A. 72-6761 which reads in pertinent part as follows:

"The board shall have authority to select a school site or sites. When a board determines that it is necessary to purchase or improve a school site or sites, or to construct, equip, furnish, repair, remodel or make additions to any building or buildings used for school purposes, or to purchase school buses, such board may submit to the electors of the unified district the question of issuing general obligation bonds for one or more of the above purposes, and upon the affirmative vote of the majority of those voting thereon, the board shall be authorized to issue such bonds. The board shall adopt a resolution stating the purpose

for which bonds are to be issued and the estimated amount thereof. The board shall give notice of said bond election in the manner prescribed in section 10-120 of the General Statutes of 1949 or any amendments thereto and said elections shall be held in accordance with the provisions of the general bond law. . . ."

It is not disputed that the proposition or propositions submitted by the district fall within the authorization of 72-6761.

The election notice was drawn and published pursuant to the provisions of K. S. A. 1965 Supp. 72-67,114 (*f*) which reads:

"(*f*) Notice of any bond election of any unified district shall be made by one publication in a newspaper of general circulation in the unified district once each week for three (3) consecutive weeks, the first publication to be not less than twenty-one (21) days prior to such election before such election and not less than fourteen (14) days before such election. The notice shall state (1) the name of the unified district, (2) the date of the bond election, (3) the purpose for which the bonds are to be issued, (4) the amount of bonds to be issued, (5) the proposition to be voted upon, (6) the hours of opening and closing of the polls, (7) the voting place or places and the territory each voting place is to serve, (8) the amount and purpose of the bonds proposed to be issued, and (9) the address of the election headquarters of the officer or board conducting the election."

This statute was repealed in 1968, but as to these proceedings it was in effect and controlling. (*Masheter v. Vining*, 198 Kan. 691, 426 P. 2d 149.) There is no complaint concerning the election notice or its publication except as to the form of the ballot proposition.

Both plaintiff and defendant agreed on oral argument that K. S. A. 10-120, of the general bond law, controlled matters concerning the form in which propositions or questions were to be submitted on a ballot. However, *amicus curiae* Bruce points out that school districts, together with some other municipalities, are specifically exempted from the application of 10-120 by the terms of the statute itself. In what appears to be a contradiction of the exemption referred to, 72-6761 provides: "The board shall give notice of said election in the manner prescribed in section 10-120."

This dilemma was laid to rest by our opinion in *Masheter v. Vining*, supra. Although we were dealing specifically with the possible effect on K. S. A. 10-120 of a 1949 amendment to what is now K. S. A. 64-102, we declared K. S. A. 1965 Supp. 72-67,114 (*f*) controlling as to notice of a bond election in a unified school district in September of 1965. (See *Masheter v. Vining*, supra, p. 693.)

*Amicus curiae* Bruce extends his contention by arguing that since the district is exempted from the application of 10-120, most of

the cases cited by both plaintiff and defendant are of no aid in disposing of this appeal. *Amicus curiae* Bruce overlooks the fact that both 10-120 and 72-67,114 (*f*) deal with notice of elections. The problem here concerns the ballot proposition and is governed by K. S. A. 25-605 (now K. S. A. 1968 Supp. 25-605), which requires ballot proposition language and form in essentially the same terms as required by 10-120, with respect to separating propositions. Moreover, though the cases deal with various municipal bond authorization statutes and also different election notice statutes, the validity of ballot propositions are subjected to the same or similar test in each case. This is found to be true from an analysis of opinions of this court dealing with the subject, regardless of the class of municipality involved or the particular authorization and notice statutes under which proceedings were had. (See *Heller v. Rounkles,* 171 Kan. 323, 339, 232 P. 2d 225.)

We turn to cases which we believe to be decisive of the ballot proposition problem confronting us.

In what appears to be the first two cases (*Lewis v. County of Bourbon,* 12 Kan. * 186, and *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400) dealing with the subject in this jurisdiction, the decisions rested on failure to separate propositions on the election ballot. However, in the *Leavenworth* case we find the principles enunciated and the reasoning set out which gave rise to the general rule consistently followed by this court in later cases. In *Leavenworth* it was said:

". . . Since, therefore, no bonds may be issued for any purpose or for any set of purposes unless the people be consulted and give their consent, every voter must have a fair opportunity to register an intelligent expression of his will. . . ." (pp. 77, 78.)

What became the general rule was succinctly stated by Justice Schroeder in the recent case of *Wycoff v. Board of County Commissioners,* 189 Kan. 557, 370 P. 2d 138:

". . . The election law contemplates that when a special proposition is submitted to a popular vote, the recitals on the ballot shall clearly state the substance of the question the electors are to vote upon; and where that proposition is so obscurely stated that the electors may be misled thereby, the election is vitiated. (*Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400; *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P. 2d 877; and *Board of Education v. Powers,* 142 Kan. 664, 668, 51 P. 2d 421.)" (pp. 559, 560.)

Applying the foregoing rule to the case at hand, defendant argues the voters were led to believe they were voting on a 15 million dollar

proposal whereas, in fact, the cost of the program contemplated by the district board amounted to an estimated 27 million dollars. Obviously, the proposition in failing to state the substance of the board's program might mislead the voters. The proposition not only fails to state the estimated total cost but no mention is made that the bond receipts were to be used in conjunction with the proceeds of a building fund levy, a capital outlay fund levy and government grants. In short, the electors were invited to vote on a proposition with an indicated cost of $15,000,000.00; it is not suceptible of an interpretation that the cost of the program was to be $15,000,000.00 plus whatever building fund balances, future proceeds of building fund levies, and government allotments were available.

We believe the case of *Board of Education v. Powers,* supra, to be so factually similar as to control the issue presented here. As here, the action was brought in mandamus to compel the state auditor to register bonds presented to him by the board of education. The adopted resolution stated that it was necessary to build and furnish a new building at a total cost of $391,500; that the board had filed an application with a federal agency for a loan and grant amounting to forty-five percent of the total cost or $176,175.00, of which $162,343.00 could be used for constructing and furnishing the building; and that in addition to the $162,343 obtained by federal grant, it was necessary to issue bonds in the sum of $198,-500.00. The proposition read:

" 'Shall the Board of Education of the city of El Dorado issue bonds in the amount of one hundred ninety-eight thousand five hundred dollars ($198,500) for the purpose of erecting a school building?' " (142 Kan. p. 665.)

The question presented on appeal was whether the ballot clearly stated the proposition in substance. It was observed in the opinion that the proposition standing alone might be said to be clear and definite, but when considered with the entire plan it is apparent the electorate was only called upon to vote on a part thereof and was not informed as to the whole situation. It was held the notice of the election and the ballot proposition did not clearly and fully apprise the electors of what the board proposed to do in erecting the new building. For that reason the notice of election and proposition were declared insufficient and the application for writ of mandamus was denied.

In *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P. 2d 877, the general rule concerning ballot propositions in

bond elections is laid down in paragraph 2 of the syllabus and is quoted with approval in the *Powers* case and cited in *Wycoff*. The rule as laid down in *Powers* has been consistently followed or factually distinguished by this court in subsequent cases.

In *Henson v. School District,* 150 Kan. 610, 95 P. 2d 346, a proposition was held defective which submitted only a question of a $6,500 bond issue when the proceeds were to be used in conjunction with a $9,150 government grant in erecting a school building costing $15,000.00.

In *Heller v. Rounkles,* 171 Kan. 323, 232 P. 2d 225, a rural high school district submitted a proposition to issue bonds in the amount of $95,000 to pay the cost of enlarging and remodeling an existing school house. The proposition was attacked by a suit to enjoin the issuance of the bonds on the ground that it did not inform the electors of the extent of the improvements and, in particular, that the total cost of the improvements would amount to $150,000, $55,000 of which was to be paid by the common school district. In affirming the district court's ruling that the proposition was defective we stated:

"The general question presented has been treated on a number of occasions by this court in cases arising under the statute presently involved and under others of similar character, and while the facts of each case vary in particulars, it is clear from each case that election notices and ballots must clearly inform the voters as to the question submitted; that although the proposition may be stated in unequivocal terms, it must be informative of the whole and not of a part only of the proposed improvement, and of the funds applicable to the payment and the amount of bonds to be issued therefor. (citing cases)." (p. 329.)

As we have noted, the *Powers* case was cited with approval in *Wycoff v. Board of County Commissioners,* supra, and most recently in *Willmeth v. Harris,* 195 Kan. 322, 403 P. 2d 973.

Plaintiff cites the case of *Pittsburg Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112, in attempting to distinguish the facts here from those in *Powers*. While it was disclosed in the *Davis* case the proposition only called for the issuance of $450,000.00 in bonds and the board of education had adopted a program calling for expenditures of $755,000, the only issue considered by this court was whether more than one proposition was submitted on the ballot. No mention was made that the ballot was misleading for failing to advise the voters of the total cost of the project or that the proceeds of the bonds would be used in conjunction with proceeds of bonds

issued, following a previous bond election, since apparently this question was not raised. Since the issue was not before the court in the *Davis* case it is not authority for the proposition that the instant case does not fall within the rule of *Powers.*

Plaintiff attempts to draw an analogy with *City of Coffeyville v. Robb*, 165 Kan. 219, 194 P. 2d 495. There the election simply called for additional bond money to be added to a previous bond issue which had proved insufficient to complete construction of the proposed project. There was no contention that funds from any other source would be available. Failure to mention the previous bond issue in the *Robb* case, where bond proceeds were to be added to bond proceeds to complete the same project, is not analogous to the omission here that bond proceeds were to be used in conjunction with levy fund balances, future levy proceeds and government grants to pay for a program, the cost of which was known by plaintiff to greatly exceed the proposed bond issue. In the opinion this court discussed at length and carefully distinguished the *Powers* case.

Plaintiff further attempts to make a distinction of the instant case from *Powers* on the ground that there only one school facility was involved, while here the proposition includes several buildings and sites. We cannot agree with plaintiff's reasoning. We know of no reason why voters should not be advised of the total cost and funds to be used with respect to several school facility improvements as well as when only one is involved.

Even though the election notice and ballot proposition are found to give the voters insufficient advice, plaintiff suggests that adequate notice was supplied by another means. In this connection plaintiff submitted an affidavit of the district clerk setting out the annual receipts from the capital outlay fund levy and the annual encumbrances thereon from its inception in 1965 through 1967. A publisher's affidavit showing the publication notice of the capital outlay fund resolution was attached as an exhibit to the clerk's affidavit. The notice was published in the Wichita Beacon on July 2, 9 and 16, 1965. In substance the notice announced that the district board would make an annual levy as of January 1, 1965, for four tax years or not to exceed five years in the amount of 3.938 mills upon all taxable tangible property in the district, subject to modification as to any annual levy as permitted by law. The purposes listed in the notice, except for the acquisition of buses, were generally the same

as those set out in the ballot proposition here. The notice referred to Section 37 of Senate Bill No. 402 of the 1965 Kansas Legislative Session.

Plaintiff argues that the capital outlay fund resolution notice, published in July 1965, gave the electors sufficient knowledge of the existence of other usuable funds so as to supply any deficiency of information in the ballot proposition submitted in the September 1966 election. We cannot agree. We cannot see how an elector voting at the bond election in September 1966 could tie the two together and assume the bond election and the special fund levy notice of July 1965 were hand in hand.

The levy notice referred to a senate bill of the 1965 Kansas Legislative Session. The bond election notice and ballot proposition refer to K. S. A. 72-6761. How could a voter reconcile these references? The levy was subject to modification and also provided for the acquisition of buses. Nothing in the levy notice indicated that there was, or could be, a buildup for future needs. Plaintiff fails to suggest any manner in which notice of the government grant was communicated to the electrorate.

What has been said effectively disposes of this appeal on the grounds that the election notice and the ballot proposition failed to sufficiently advise a voter as to the proposition upon which he was voting, specifically because the voter was not informed of the conjunctive use of other funds; and further the manner in which the proposition was submitted inaccurately, indicated a $15,000,000 proposition, whereas the actual estimated cost of the program was considerably in excess thereof. The basis of our holding is limited to the premises related.

In view of the conclusions just announced, a determination of the second issue presented in this appeal is not required. However, we believe the positions taken by the parties in this regard are worthy of brief comment.

The defendant, in the first instance, rejected registration of the Temporary Improvement Note on the sole ground that the ballot proposition failed to present the overall picture. The trial court in addition to ruling in favor of defendant on this ground also found the ballot defective because more than one proposition was submitted. Plaintiff expresses great alarm at the prospect of separately submitting each facility improvement project contained in the program of a large unified district, charged with furnishing facilities

for more than one hundred attendance centers, and we are well aware of the reasons for plaintiff's alarm. Plaintiff submits the 14 projects are connected, interrelated, and make up only one program and thus may be submitted as one proposition within the contemplation of the language found in K. S. A. 72-6761. Furthermore, plaintiff points out that the proposition submitted is drafted in the language of the statute. In support of its position plaintiff cites *Thomas v. Covell*, 119 Kan. 684, 240 Pac. 574, and *Pittsburg Board of Education v. Davis*, supra, wherein connected subjects tendered combinedly as constituting one municipal project were held to amount to one proposition and properly submitted as such.

The attorney general, as counsel for defendant, concedes in his brief and on oral argument that the 14 different facility improvement projects, making up defendant's program, need not be separately listed and subjected to an item by item vote. He disagrees, however, with plaintiff's interpretation of 72-6761 in this regard. Plaintiff submits that the proper interpretation to be placed upon the phrase "for one or more of the above purposes" in 72-6761, is to allow the board to submit the proposition for issuing bonds for the various purposes in combined form, rather than in the alternative as was done in the instant case. The attorney general suggests that if the total estimated cost of the program and the use of other funds in conjunction with the bond proceeds were recited, and if the conjunction *or* were replaced by *and*, the proposition would be legally sufficient and fall within the rule laid down in *Powers*. (See *Thomas v. Covell*, supra; *Pittsburg Board of Education v. Davis*, supra; and *Robertson v. Kansas City*, 143 Kan. 726, 56 P. 2d 1032.)

In view of the possibility of the existence of additional information or relative evidence bearing on the question whether plaintiff's projects are so connected that they may be tendered combinedly as one proposition, either in the alternative as submitted or in combined form as suggested by the attorney general; neither form is approved nor disapproved. We have related the positions taken by the parties in this regard merely for the purpose of showing some of the matters to be considered by unified districts when confronted by similar problems.

The judgment of the trial court sustaining defendant's motion for summary judgment is affirmed.